**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Scott MARION, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 2009.

Filed Sept. 2, 2009.

Joseph M. Cosgrove, Forty Fort, for appellant.

Nathan L. Boob, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: ORIE MELVIN, GANTMAN, and CLELAND, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Scott Marion, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his jury trial conviction for delivery of marijuana, possession with intent to deliver a controlled substance ("PWID"), possession of small amount of marijuana for personal use, and criminal use of communication facility.[1] Appellant asks us to determine whether the trial court erred when it (1) directed the jury to continue deliberations; (2) found Appellant failed to establish an entrapment defense; and (3) imposed a mandatory minimum sentence under the "drug-free school zone"

---

1. 35 P.S. §§ 780–113(a)(30);(a)(31)(i); 18 Pa. C.S.A. 7512(a), respectively.

sentencing provision at 18 Pa.C.S.A. § 6317. We hold (1) the court's jury instruction in the face of deadlock was appropriate; (2) Appellant failed to establish an entrapment defense; and (3) the court properly sentenced Appellant under the "drug-free school zone" sentencing provision at 18 Pa.C.S.A. § 6317. Accordingly, we affirm.

¶ 2 The trial court opinion sets forth the relevant facts of this appeal as follows:

Appellant was a student at Pennsylvania State University, State College Campus. On October [20, 2005], Appellant was visited at his apartment by a confidential informant who knew Appellant from Penn State Worthington. On this date, the confidential informant received marijuana from Appellant. On November 3, 2005, the confidential informant contacted Appellant by phone to purchase marijuana. This time the confidential informant was accompanied to Appellant's apartment by an undercover police officer. The undercover police officer was able to purchase¼ ounce of marijuana from Appellant for $35. [Police arrested Appellant, and the Commonwealth charged him with two counts each of Delivery of marijuana, PWID, criminal use of communication facility, and possession of small amount of marijuana].

\* \* \*

[On October 12, 2007], jury deliberations in the present case commenced at 12:58 p.m. at the conclusion of a half-day trial. At 4:09 p.m. the same day, this [c]ourt received a note from the jury stating that the jury was deadlocked on some of the charges and, "further deliberation will not change any minds." This [c]ourt decided to give the jurors encouragement to continue the deliberation for 45 minutes. In response, Appellant moved for a mistrial arguing that a

"pep talk" would be inappropriate and a mistrial should therefore be declared. [The] court denied the motion for mistrial and then addressed the jury with both counsel present:

[W]hat I am going to do for the next maybe five minutes is to challenge you to try to make—to try to determine whether there's any possibility of reaching a verdict on the outstanding counts. I'm going to give you a period of time to do that. I am not going to tell you you're going to be locked up in that room until 8:00 o'clock at night or anything like that. That's not my intent. It may help when you return for your deliberations—and I'm going to ask you to deliberate for another 45 minutes. It may help during that 45 minutes if you take a fresh look at perhaps an approach that you haven't used yet. I had other jurors suggest to me that you go to the jury room and try—if you believe one way, try arguing the other side of the coin or something like that. . . .

(Trial Court Opinion, filed June 11, 2008, at 1–2, 9) (internal citations omitted). The court further instructed the jury:

Again, everybody here appreciates the work that you're doing everybody, and we know that it's not easy but—and I'm not going to keep you here forever. But I would like to ask you to take one more shot at it and try re-inventing the wheel if that's what it takes, you know, stop looking at the earth like it's flat, whatever analogy you want me to give you and try to see if there isn't some way as a group that you can explore something that will help come to a resolution as to the remaining charges.

We call this a pep talk, okay. You don't look very peppy. You don't look very happy and I understand that but you're going to be out of here shortly. By that I mean I'm not going to keep you forev-

er, but I would like you to give it one more shot.

So we'll come down in 45 minutes. If you have not told us that you have reached a verdict otherwise, we'll come down in 45 minutes, and we'll bring you up, and then we'll discuss it at that time.

(N.T. Trial, 10/12/07, at 218–19). That same day, the jury convicted Appellant. On October 15, 2007, the Commonwealth gave notice of its intent to pursue the sentence enhancement under the Drug–Free School Zone Act, 18 Pa.C.S.A. § 6317. On December 11, 2007, the court sentenced Appellant to an aggregate term of two (2) to four (4) years of incarceration. Appellant did not file any post-sentence motions.

¶ 3 Appellant timely filed his notice of appeal on January 7, 2008. On January 9, 2008, the court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b). Appellant timely complied on January 29, 2008. That same date, Appellant also filed an application for permission to file a supplemental Rule 1925(b) statement, which the court granted on January 31, 2008. After Appellant received the trial and sentencing hearing transcripts, Appellant timely filed a supplemental Rule 1925(b) statement.

¶ 4 Appellant raises the following issues on appeal:

WHETHER THE TRIAL COURT ERRED IN DIRECTING THE JURY TO CONTINUE ITS DELIBERATIONS DESPITE ITS INDICATION THAT IT WAS DEADLOCKED, GIVEN THE COERCIVE NATURE OF THE COURT'S SUPPLEMENTAL INSTRUCTION AND ITS INCLUSION OF A "TIME FUSE" DEADLINE FOR COMPLETION OF DELIBERATIONS?

WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT HAD ESTABLISHED ENTRAPMENT AS A MATTER OF LAW, AND IN IMPROPERLY INSTRUCTING THE JURY IN ITS SUPPLEMENTAL INSTRUCTION REGARDING APPELLANT'S BURDEN RELATIVE TO THE ENTRAPMENT DEFENSE?

WHETHER THE TRIAL COURT ERRED IN IMPOSING A MANDATORY MINIMUM SENTENCE OF TWO TO FOUR YEARS IMPRISONMENT GIVEN THAT [THE COMMONWEALTH] FAILED TO PROVIDE SUFFICIENT EVIDENCE TO ESTABLISH THAT THE RELEVANT TRANSACTION OCCURRED WITHIN ONE THOUSAND FEET OF A SCHOOL PURSUANT TO 18 PA. C.S.A. § 6317?

(Appellant's Brief at 3).

■ ¶ 5 In his first issue, Appellant argues the court "crossed the constitutional line in several ways when it issued its supplemental instruction to the declaredly deadlocked jury." (*Id.* at 9). Specifically, Appellant alleges the jury informed the court that while agreement had been reached on certain counts, further deliberations would not change the minds of any jurors regarding the remaining counts. Appellant avers the court should have declared a hung jury. Instead, Appellant claims the court improperly suggested to the jury how to conduct further deliberations, and gave the jury a forty-five (45) minute "time fuse" to deliberate. Appellant posits any time limitation on jury deliberations is suspect and inherently coercive, which renders the instruction wholly inappropriate. Appellant believes the court "invaded the jury's exclusive province by offering a veritable 'stage direction' on how that deliberation was to be

conducted by 'suggesting' a 'role play' where jurors were to 'argue the other side of the coin' contrary to their views." (*Id.* at 14). Essentially, Appellant posits the jury instruction far exceeded asking the jury to consider other views; instead, the court destroyed the individual views of the jurors prior to the re-instruction. Additionally, Appellant contends the jury was also notably fatigued. Appellant concludes the verdict was a legal nullity due to the court's charge and the jury's fatigue. We disagree.

¶ 6 The relevant scope and standard of review for a claim involving a court's instructions to a deadlocked jury is for an abuse of discretion. *Commonwealth v. Santiago*, 492 Pa. 297, 424 A.2d 870 (1981). This Court will find an abuse of discretion regarding jury instructions where the jury verdict is the product of coercion or fatigue. *Commonwealth v. Greer*, 597 Pa. 373, 387, 951 A.2d 346, 354–55 (2008). Relevant factors in this assessment include the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings, and indications from the jury on the possibility of reaching a verdict. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97 (1995), *cert. denied*, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). Additionally, this Court leaves the length of jury deliberation to the sound discretion of the trial court. *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

¶ 7 In *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), our Supreme Court addressed judicial interaction with deadlocked juries; prohibited the use of the *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) jury charge;[2] and cited with approval the American Bar Association ("ABA") guidelines governing jury deadlock, noting: "Such guidelines may avoid the evils inherent in the *Allen* charge and with proper usage may aid in the alleviation of problems which arise when juries are deadlocked." *Spencer, supra* at 305, 275 A.2d at 338. The ABA guidelines provide:

STANDARD 15–5.4 LENGTH OF DELIBERATIONS; DEADLOCKED JURY

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(1) that in order to return a verdict, each juror must agree thereto;

(2) that jurors have a duty to consult with one another and to **deliberate with a view to reaching an agreement,** if it can be done without violence to individual judgment;

(3) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(4) that in the course of deliberations, **a juror should not hesitate to re-examine his own views** and change his opinion if convinced it is erroneous; and

(5) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

---

**2.** An *Allen* charge, in pertinent part, states: "[A] dissenting juror should consider whether his doubt is a reasonable one if it made no impression upon the minds of so many other jurors, equally as honest and as intelligent as himself." *Spencer, supra* at 335, 275 A.2d at 303.

(b) If it appears to the court that the jury has been unable to agree, **the court may require the jury to continue their deliberations and may give or repeat an instruction** as provided in subsection (a). The court shall **not require or threaten to require the jury to deliberate for an unreasonable length of time** or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

ABA Standards for Criminal Justice 15–5.4 (emphasis added).

Nothing in the law requires that deliberations be aborted because jurors may feel uncomfortable in being directed to listen to each other and to attempt to hammer out their differences. Indeed, if avoidance of conflict or discomfort were the prime directive, we could do away with deliberation entirely and tally private, individual votes from the jury. As the *Allen* Court noted, and the [*Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ] Court reaffirmed:

The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of [others] who are

equally honest and intelligent as himself.

To this, we would add (and this is what *Spencer* refines *Allen* to accomplish), there is nothing improper in directing all jurors to be open to the arguments of their fellow jurors.

*Greer, supra* at 398–99, 951 A.2d at 361–62 (some internal citations omitted).

■ ¶ 8 Unless the record indicates that the verdict was reached because of the jurors' desire for rest and sleep or fatigue, this Court will not reverse a trial court's decision to extend jury deliberations. *Commonwealth v. Moore,* 398 Pa. 198, 206, 157 A.2d 65, 70 (1959) (holding jury fatigue did not exist where verdict was returned at 6:10 a.m., following an eleven (11) hour jury deliberation in lengthy murder trial, because record did not indicate jury's verdict was result of jury fatigue and confusion, and jury did not ask court for further instruction). *Compare Commonwealth v. Clark,* 404 Pa. 143, 170 A.2d 847 (1961) (reversing jury verdict where court ordered jury to continue deliberations at 4:12 a.m., after ten (10) hours, thirty (30) minutes of deliberation; record revealed jury indicated deadlock, fatigue, impatience, and confusion; and court "did not seriously endeavor to dispel this disorder and confusion other than by terse and unilluminating advice").

¶ 9 Instantly, the trial court reasoned as follows with regard to the jury charge:

Appellant argues this [c]ourt's suggestion that jurors try arguing the other side of the coin was impermissible and influenced the jury's deliberation. [The court] believes that its suggestion falls short of any coercion.... [The court] respectfully submits that its suggestion to all jurors, that they try arguing the opposite side of the coin, was permissible and did not effect any coercion.

(Trial Court Opinion, at 10). We agree. The trial took one-half a day, and the jury informed the court of its deadlock after three (3) hours and eleven (11) minutes of deliberation. Following the jury's assertion, the court instructed the jury, in pertinent part: "If after taking another look at this, the jury's opinion is that it cannot reach a verdict as to the three counts that you have indicated you still have not reached a verdict, then I'll discuss it with the lawyers again, and we'll make a decision at that point as to what we're going to do." (N.T. Trial at 217). Contrary to Appellant's "time fuse" argument, the court left open the possibility for further deliberations. The court merely instructed the jury to listen to each other, open their ears to the arguments of other jury members, take a fresh approach in reexamining their individual positions, and attempt to hammer out their differences. *See Greer, supra.* We see no abuse of discretion in this course of action. *See id.*

¶ 10 Further, the sole basis for Appellant's jury fatigue argument is the court's comment to the jury, "You don't look very peppy. You don't look very happy and I understand that but you're going to be out of here shortly." (N.T. Trial at 218–19). The jury did not mention fatigue, the court simply commented on its impression of the jury's general reaction. The jury did not complain of hunger, lack of sleep, or a desire to adjourn. Thus, the court's remark that the jury did not look "very peppy" is alone insufficient to overturn the verdict. *See Moore, supra.* Accordingly, Appellant's challenge to the court's supplemental charge to the jury merits no relief.

¶ 11 In his second issue, Appellant claims he did not have a pre-disposition to sell drugs prior to the police activity. Appellant avers the informant was Appellant's friend, and the police exploited their friendship to set up Appellant as a drug dealer. Appellant asserts that apart from the two sales involving the confidential informant, the Commonwealth failed to present any evidence that Appellant had sold marijuana to others. Appellant also argues he merely sold a small amount of marijuana to help his friend, not for profit. Further, Appellant complains the jury instructions defining preponderance of evidence were improper because the court told the jury fifty-one percent (51%) was required for Appellant to establish a preponderance of the evidence. Appellant posits "the emphasis on such a specific numerical concept as '51 percent' could do nothing but either misdirect the jury or so confuse it (especially in its state of fatigue) as to completely destroy any legitimate foundation for the guilty verdict rendered thereafter." (Appellant's Reply Brief at 5) Appellant concludes the operative facts were not in dispute; consequently, he established the defense of entrapment as a matter of law and the court erred by failing to discharge him. We disagree.

¶ 12 Initially, we observe, "to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Rule] 1925. Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)).

¶ 13 The Crimes Code defines the defense of entrapment in relevant part as follows:

§ 313. Entrapment

(a) General Rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages

another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of Proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b). Pennsylvania courts apply an "objective" test for entrapment, as set forth in *Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976):

[T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

*Id.* at 1285 (emphasis added). *See also Commonwealth v. Weiskerger*, 520 Pa. 305, 311, 554 A.2d 10, 13 (1989) (holding conduct of police is chief inquiry in entrapment analysis). As this Court explained:

[T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior compara-ble to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

*Commonwealth v. Lucci*, 443 Pa.Super. 431, 662 A.2d 1, 3 (1995), *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1995) (citation omitted). *Accord Commonwealth v. Borgella*, 531 Pa. 139, 611 A.2d 699 (1992); *Commonwealth v. Medley*, 725 A.2d 1225 (Pa.Super.1999), *appeal denied*, 561 Pa. 672, 749 A.2d 468 (2000); *Commonwealth v. McGuire*, 339 Pa.Super. 320, 488 A.2d 1144 (1985). "In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." *Borgella, supra* at 144, 611 A.2d 699 (citing *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). *See, e.g., Borgella, supra* at 143–44, 611 A.2d 699 (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs); *Commonwealth v. Wright*, 396 Pa.Super. 276, 578 A.2d 513 (1990) *(en banc), appeal denied*, 526 Pa. 648, 585 A.2d 468 (1991) (holding entrapment established as matter of law where police helped informant cultivate false friendship with defendant in order for informant to persuade defendant to purchase and supply drugs); *Lucci, supra* at 7–8 (holding outrageous and egregious police conduct constituted entrapment as matter of law where confidential informant was defendant's very close friend, confidential informant knew defendant had just returned from drug rehabilitation, confidential informant appealed to bonds of friend-

ship and sympathy engendered by his mother's alleged impending death, and repeatedly approached defendant about selling drugs in exchange for "free high").

¶ 14 Where police "do no more than afford appellant an opportunity" to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. *Commonwealth v. Morrow,* 437 Pa.Super. 584, 650 A.2d 907, 913 (1994), *appeal denied,* 540 Pa. 648, 659 A.2d 986 (1995). *See also Commonwealth v. Zingarelli,* 839 A.2d 1064 (Pa.Super.2003), *appeal denied,* 579 Pa. 692, 856 A.2d 834 (2004) (providing opportunity without attempting to overcome appellant's reason and good sense does not rise to level of outrageousness necessary to find entrapment as matter of law); *Commonwealth v. Ritter,* 419 Pa.Super. 430, 615 A.2d 442 (1992), *appeal denied,* 535 Pa. 656, 634 A.2d 220 (1993) (offering opportunity to sell drugs alone does not constitute sufficiently outrageous police conduct for purposes of entrapment defense). Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation." *Morrow, supra* at 914.

¶ 15 Pennsylvania case law has consistently held:

> [T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law.... Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense.

*Lucci, supra* at 3 (quoting *Commonwealth v. Thompson,* 335 Pa.Super. 332, 484 A.2d 159, 163–64 (1984)). *See, e.g., Commonwealth v. Mance,* 422 Pa.Super. 584, 619 A.2d 1378 (1993), aff'd, 539 Pa. 282, 652 A.2d 299 (1995) (holding matter of entrapment properly submitted to jury where operative facts are disputed). Importantly, the court may also consider, based upon the operative facts, whether it can reject an entrapment defense as a matter of law. *Morrow, supra* at 914. Operative facts are:

> [T]hose that are necessary for [A]ppellant to prove by a preponderance of the evidence that he was entrapped. Under the objective test for entrapment, these would be facts that go to the course of conduct of a government officer or agent that would fall below standards to which common feelings respond, for the proper use of government power.

*Lucci, supra* at 4 (citation omitted).

¶ 16 In the instant case, with respect to Appellant's first issue, he initially filed a Rule 1925(b) statement that raised one issue: "The sentence imposed by the trial court was erroneous in that it included a mandatory minimum term where insufficient evidence was introduced to sustain same." *(See* Appellant's Statement of Errors Complained of on Appeal, filed 1/29/08.) In his court-approved supplemental Rule 1925(b) statement, Appellant raised the following claims:

> 1. The sentence imposed by the trial court was erroneous in that it included a mandatory minimum term where insufficient evidence was introduced to sustain same. This is especially so, but not limited to the fact that, the Commonwealth failed to produce evidence as to where, exactly, in the structure in question, the alleged drug transactions or infractions occurred, and further that no

measurements were provided as to the distance between the point of said transactions or infractions and the "school zone" in question herein. Further, application of this mandatory minimum term was improper in that the jury made no findings as to the facts necessary for implementation of same.

2. The judgment in this matter must be vacated in that [Appellant's] entrapment defense, by all evidence adduced at trial, was established as a matter of law, thus requiring dismissal of this matter. In conjunction with this establishment of entrapment as a matter of law, the evidence pertaining to the matters herein was insufficient to sustain the various convictions.

3. Error # 2 above, is incorporated herein by reference and in addition thereto, the trial court erred in failing to instruct the jury with regard to the employment by the Commonwealth of a known friend of [Appellant] in the perpetration of the alleged offenses in question herein and the exploitation by the Commonwealth of this friendship in perpetration of the entrapment referred to above, requiring reversal of judgment of sentence and remand for a new trial.

4. The trial court erred in failing to grant [Appellant's] motion for mistrial when the jury informed the court that it was deadlocked.

5. Error # 4, above, is incorporated herein by reference and in addition thereto, the trial court erred when, after denying [Appellant's] motion for mistrial, re-instructed the jury to continue its deliberations and in so doing, erred by suggesting to the jurors that they continue their deliberations by trying to argue the "other side of the coin," ... the position opposite from that which they had held when they informed the court that they were deadlocked, and

therefore the court improperly influenced the manner in which said deliberations should occur. In furtherance of this error, the court also impermissibly set a deadline of "45 minutes," ... for this re-deliberation and again impermissibly influenced that deliberation process.

6. With regard to the specific offense of criminal use of a communication facility at No. 1199 of 2007, the evidence was insufficient to sustain the conviction thereon in that there was [no] evidence that the facility, *i.e.*, telephone, was used to discuss the specific offense of delivery (and/or possession with intent to deliver) the controlled substance in question.

(*See* Appellant's Supplemental Statement of Errors Complained of on Appeal, filed 4/28/08.) Neither Appellant's initial nor his supplemental Rule 1925(b) statement challenged the court's additional jury instruction on preponderance of the evidence, and the trial court's Rule 1925(a) opinion did not address that issue. Thus, Appellant's first issue is waived. *See Lord, supra.*

 ¶ 17 Regarding Appellant's entrapment claim, the court reasoned as follows:

Having reviewed the transcript, this [c]ourt believes that it was correct to keep the issue of entrapment with the jury. The crux of Appellant's trial strategy for proving entrapment went to establishing that Appellant and confidential informant were friends who would lend each other marijuana. This information bears weight on [18 Pa.C.S.A. § 313(a)(2)].

* * *

Unlike [*Lucci, supra*] in this case many of the operative facts were in dispute. There was a genuine dispute of facts regarding the friendship between Appel-

lant and confidential informant. The confidential informant maintained that Appellant was an acquaintance who once or twice in the past smoked marijuana together. There was also a genuine issue regarding who instigated the buy. The confidential informant testified that when he saw Appellant at State College, Appellant told him, "I also have marijuana if you were interested in buying." It is clear from the above testimony that operative facts were in dispute and it would have therefore been inappropriate to remove the question of entrapment from the jury's deliberation.

Finally, this case does not contain egregious conduct by the police that would rise to the level required to find entrapment as a matter of law. Even if the confidential informant used his friendship with Appellant to induce the sale of drugs, the case is entirely devoid of any further egregious conduct. The confidential informant did not exploit a personal weakness that only a friend would know nor did he appeal to Appellant's emotions as did the confidential informant in *Lucci.* Finally, unlike *Lucci,* there was testimony that Appellant initiated the sale of drugs. Ultimately, the question to be determined with regard to egregious conduct is how would reasonable juries, representing the "common feelings" of the community, respond to the behavior of the police or their agent? In order for a confidential informant to be successful, he ... must gain the trust of suspected criminals. It is this [c]ourt's belief that the facts presented in this case, reestablishing a friendship to apprehend a drug dealer, did not exceed the level of behavior tolerated by the community in the pursuit of criminals. At the very least, this behavior did not rise to the level that would permit this [c]ourt to remove the

question of entrapment from the determination of the jury.

(Trial Court Opinion at 6–8) (some internal citations omitted). We accept the court's analysis. Moreover, nothing in the record indicates the police originated, implanted, or induced the crime. *See Borgella, supra.* The police did no more than afford Appellant an opportunity to sell drugs. *See Morrow, supra.* Such actions are not considered sufficiently outrageous police conduct to support an entrapment defense as a matter of law. *See id.; Zingarelli, supra; Ritter, supra.* The court correctly left the question of entrapment to the jury, because the operative facts were in dispute and the police conduct did not establish entrapment as a matter of law. *See Mance, supra.*

¶ 18 In his final issue, Appellant contends the Commonwealth failed to prove Appellant's drug transaction occurred within one-thousand (1000) feet of Penn State University. Appellant argues the Commonwealth did not measure the distance between the university property and Appellant's apartment. Appellant asserts actual measurement, not the site map submitted by the Commonwealth, was necessary to verify the distance. Appellant concludes the court erred in applying the mandatory minimum sentence under 18 Pa.C.S.A. § 6317, and this Court must vacate the judgment of sentence and remand for a new sentencing hearing. We disagree.

¶ 19 "Challenges to a court's application of a mandatory sentencing provision implicate the legality of the sentence." *Commonwealth v. Lewis,* 885 A.2d 51, 55 (Pa.Super.2005), *appeal denied,* 588 Pa. 777, 906 A.2d 540 (2006). *See also Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280 (2000) (holding application of mandatory provision implicates legality, not discretionary, aspects of sentencing).

A challenge to the legality of a sentence cannot be waived. *Commonwealth v. Rossetti*, 863 A.2d 1185, 1193 (Pa.Super.2004), *appeal denied*, 583 Pa. 689, 878 A.2d 864 (2005). Further, we note:

> Issues relating to the legality of a sentence are questions of law. [T]herefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary. Additionally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law.

*Lewis, supra* at 55 (citing *Commonwealth v. Williams*, 871 A.2d 254, 262 (Pa.Super.2005)).

¶ 20 Section 6317 of the Crimes Code provides, in pertinent part, as follows:

### § 6317. Drug-free school zones

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [35 P.S. § 780–113(a)(14) or (30)] ) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

18 Pa.C.S.A. § 6317(a)(1), (2) (effective August 25, 1997). The mandatory drug free school zone enhancement provision of Section 6317 applies where the evidence presented at trial and at sentencing establishes by a preponderance of the evidence that drug transactions occurred within a school zone. *See Lewis, supra.*

¶ 21 This Court has previously considered the rules of statutory construction when analyzing the legislative intent in enacting Section 6317:

> In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act. In determining the meaning of a statute, we are obliged to consider the intent of the legislature and give effect to that intention. Courts may disregard the statutory construction rules only when the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly. The General Assembly, in clarifying the proper approach to be used in the determination of legislative intent, stipulated that:
>
> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute

shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

We are to give the words of a statute their plain and ordinary meaning. We are required to construe words of a statute ... according to their common and accepted usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute.

Moreover, the Pennsylvania Supreme Court held tha[t] when interpreting a statute, presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect....

*Commonwealth v. Drummond*, 775 A.2d 849, 855–56 (Pa.Super.2001) *(en banc)*, ap-

*peal denied,* 567 Pa. 756, 790 A.2d 1013 (2001) (quoting *Commonwealth v. Campbell,* 758 A.2d 1231, 1233–34 (Pa.Super.2000) (citations and quotation marks omitted)).

¶ 22 This Court has consistently refused to interpret Section 6317 in a manner that would be inconsistent with the manifest intentions of the legislature and its overarching policy goals of protecting children and students from the dangers attendant to the drug trade:

By enacting [S]ection 6317 in place of its predecessor, the Pennsylvania General Assembly not only intended to protect our children from the evils of illegal drug dealing on school grounds and on school buses, but additionally intended to protect our children from those same evils on or near their playgrounds and recreation centers, whether associated with municipal facilities, school property or ... semiprivate apartment complexes....

It is our finding that the General Assembly's goal and purpose [in enacting this statute] was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country. Through the enactment of [S]ection 6317, it attempted to fortify the barrier that segregates the places where our children frequent from the illegal drug scene. A strict reading of the statute exemplifies the General Assembly's intent....

*Drummond, supra* at 856–57 (quoting *Campbell, supra* at 1236–37) (citations and quotation marks omitted). The Drug Free School Zone Act applies when the defendant resides in an apartment within one-thousand (1,000) feet of a school zone, even if the drugs are not necessarily accessible to students. *See id.* at 857 (stating: "The statute clearly does not require anything more than the actor delivering or possess-

ing drugs within the requisite distance from the school").

¶ 23 Instantly, in response to Appellant's claim, the trial court reasoned as follows:

At sentencing, the Commonwealth introduced evidence prepared by the State College Borough Engineers showing the area encompassed by the drug free school zone on a map. The map was created from the County's Geographical Information System and aerial photography which are considered accepted methods of survey to generate this type of map. The map was created through the standard business practice of the State College Borough.

The map shows the parcel of land from which Appellant dealt drugs. The engineer testified that the parcel of land is approximately sixty feet from Penn State University. The applicable statute, 18 Pa.C.S.A. § 6317, holds a person liable for dealing in a drug free school zone, "If the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located ... a college or university." Additionally, the Statute specifically states, "the provisions of this section shall not be an element of the crime" and "the applicability of this section shall be determined at sentencing." Based on the plain language of the statute, it is clear that Appellant's argument that a jury is required to make findings of fact as to implement 18 Pa.C.S.A. § 6317 is an incorrect interpretation of law. The only finding of fact a jury must make in regards to this statute is whether a person is guilty of a crime covered by the Controlled Substance, Drug, Device and Cosmetic Act.

* * *

[R]egardless of the method of calculating distance, it is impossible, based on

principles of mathematics and the current height of sky scrapers in this Commonwealth (let alone in centre County) for Appellant to have conducted drug sales outside the drug free school zone based on the situation of the plot of land. Therefore, this [c]ourt asserts that there was sufficient evidence presented during sentencing to find that Appellant was within 1000 feet of Penn State University.

(Trial Court Opinion at 4–5). We agree. The Commonwealth presented sufficient evidence to show Appellant sold drugs in an apartment building that was located within a drug-free school zone. *See Drummond, supra.* At the sentencing hearing, the Commonwealth presented a map with the location of Appellant's apartment in relation to the drug-free school zone. A surveyor in the State College Borough created the map by using county's geographical information system and aerial photography. The Commonwealth's witness, an engineer for the State College Borough, authenticated the map and testified the map accurately and fairly depicts the areas within the drug free school zone. Further, the Commonwealth's witness testified the drug transaction occurred within the drug-free school zone. Therefore, the court properly found the Commonwealth's evidence established by a preponderance of the evidence that Appellant engaged in drug transactions within the drug-free school zone and sentenced Appellant pursuant to the mandatory enhancement provision of Section 6317. *See* 18 Pa.C.S.A. § 6317; *Lewis, supra.*

¶ 24 Based upon the foregoing, we hold: (1) the court's jury instruction in the face of deadlock was appropriate; (2) Appellant failed to establish an entrapment defense; and (3) the court properly sentenced Appellant under the "drug-free school zone"

sentencing provision at 18 Pa.C.S.A. § 6317. Accordingly, we affirm the judgment of sentence.

¶ 25 Judgment of sentence affirmed.