J-S77004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS D. RICE | |
| Appellant | No. 2211 MDA 2015 |

Appeal from the Order Entered November 23, 2015
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000522-2014

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 18, 2016**

Appellant, Thomas D. Rice, appeals[1], *pro se*, from the order that granted him a new trial but failed to bar his retrial on double jeopardy or entrapment grounds. Additionally, he has filed in this Court an "application for relief for the purpose of obtaining an accurate record." After reviewing the parties' briefs and the certified record, we conclude that the relief Rice requests in his application to this Court is collateral to his issues on appeal.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Rice's appeal is an interlocutory appeal as of right. **See** Pa.R.A.P. 311(a)(6).

[2] In his application, Rice requests that we enter an order compelling the trial court to hold a hearing on the accuracy of certain transcripts, recuse itself from the re-trial, appoint "non-bias[ed] counsel," and compel release of
*(Footnote Continued Next Page)*

We therefore deny relief on his application, without prejudice towards his right to raise the same issues in the trial court before his re-trial. Regarding the two issues Rice has raised on appeal, we conclude that neither double jeopardy concerns nor his affirmative defense of entrapment bar his re-trial, and therefore affirm.

A jury convicted Rice of six counts of criminal use of a communication facility and three counts of conspiracy to deliver heroin. The trial court sentenced Rice to a term of imprisonment of 21 to 42 years.

In post-sentence motions, Rice argued, among others, that the trial court erred in finding that he had waived his right to counsel, that the Commonwealth had not committed a **Brady**[3] violation, and that he had not established entrapment as a matter of law. In an exhaustive 37-page opinion, the trial court concluded that the record did not support a finding that Rice had knowingly and voluntarily waived his right to counsel at trial and granted him a new trial. The trial court further found that, while the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

certain audio recordings of proceedings. Rice does not link these requests to the two issues he raises on appeal, both of which seek to prevent re-trial as a matter of law. We have already denied Rice's request for counsel of choice for purposes of this appeal, and our review of his application and all other materials relevant to this appeal has convinced us that, while the remaining relief requested by Rice may arguably be relevant to his re-trial, it is not relevant to the determination of whether Rice's re-trial is barred as a matter of law.

[3] In **Brady v. Maryland**, 373 U.S. 83 (1963), the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused.

Commonwealth had failed to disclose the plea agreement it had with an informant, this failure did not prejudice Rice at trial. Finally, the trial court concluded that while Rice had raised a triable issue of entrapment, he had not established his right to relief as a matter of law.

The Commonwealth did not appeal from the order granting a new trial. Rice did, but has limited his issues on appeal to two. First, he argues that principles of double jeopardy prohibit his re-trial. Second, he argues that the trial court erred in not granting him a directed verdict on all charges due to entrapment as a matter of law. We will address these issues in sequence.

In his first argument, Rice contends that the rule against double jeopardy contained in the Pennsylvania and United States Constitutions bars his re-trial. Our scope and standard of review of this claim is as follows:

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*.

**Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008) (citations and quotation marks omitted).

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." **Oregon v. Kennedy**, 456 U.S. 667, 679 (1982). The United States Supreme Court has recognized a relevant exception to this rule:

> [T]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are

limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id*., at 679. The Pennsylvania Supreme Court has determined that the Pennsylvania Constitution provides parallel protections:

[T]he double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992).

This Court has recognized that

[p]rosecutorial misconduct includes actions intentionally designed to provoke the defendant into moving for a mistrial or conduct by the prosecution intentionally undertaken to prejudice the defendant to the point where he has been denied a fair trial. The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant subjected to the kind of prosecutorial misconduct intended to subvert a defendant's constitutional rights. However, *Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the *Smith* Court primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process. The *Smith* standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial. A fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied. A fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and][w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.

- 4 -

*Commonwealth v. Chmiel*, 777 A.2d 459, 463-464 (Pa. Super. 2001) (citations and quotation marks omitted).

Here, a new trial was granted not due to any conduct by the Commonwealth, but due to the trial court's failure to assiduously ensure that Rice had knowingly and voluntarily waived his right to counsel at all critical stages of the proceeding. *See* Trial Court Order, 11/23/15, at 20-21. Thus, double jeopardy principles do not act to bar the re-trial, and Rice is due no relief on his first claim on appeal.

In his second claim, Rice argues that the trial court erred in failing to grant him a directed verdict on his affirmative defense of entrapment. The Crimes Code defines the defense of entrapment in relevant part as follows:

> **§ 313. Entrapment**
>
> **(a) General Rule.—**A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of Proof.—**Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b). Pennsylvania courts apply an objective test for

entrapment:

> [T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the **conduct of the police** and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

***Commonwealth v. Marion***, 981 A.2d 230, 238 (Pa. Super. 2009),

(quotation and citation omitted; emphasis added). As we explained:

> [T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

***Id***., at 238 (quotation and citation omitted).

"In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." ***Commonwealth v. Borgella***, 611 A.2d 699, 701 (Pa. 1992) (citing ***Jacobson v. United States***, 503 U.S. 540, (1992) (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs)).

Where police 'do no more than afford appellant an opportunity' to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation."

Pennsylvania case law has consistently held:

[T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law…. Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense.

*Marion* 981 A.2d at 239 (citations omitted). In other words, to prevail on an entrapment defense as a matter of law, the defendant must prove that the evidence of entrapment was so overwhelming that it could admit of no other conclusion. *See Commonwealth v. Weiskerger*, 554 A.2d 10, 14 (Pa. 1989).

Rice's defense centers on the cover story utilized by the undercover officer when he first approached Rice to purchase heroin. The undercover officer testified that he utilized a cover story that he wanted to purchase heroin for his girlfriend. *See* N.T., 1/18/14, at 63. "I don't use heroin, I have a girlfriend that has an addiction. There had been some relationship problems between her and I because of it." *Id*.

The informant that the undercover officer utilized to introduce him to Rice testified to an almost identical cover story. The first difference in the

story was that, instead of a girlfriend, it was the undercover officer's wife that was addicted to heroin. *See id*., at 184. Of most importance to this appeal, however, is that the informant testified that he told Rice that the undercover officer's wife needed heroin because she was "dope sick." *Id*. The informant further testified that Rice had responded that he didn't deal heroin anymore, but he might be able to get some from his old supplier. *See id*.

Rice argues that this testimony establishes entrapment as a matter of law. We disagree. Even giving credence only to the testimony that supports Rice's argument, we conclude that a reasonable jury could find that the cover story provided by the informant was not such egregious conduct that it created a substantial risk that it would induce an innocent person to commit the crime. A rational jury could conceivably find that Rice, if he were truly innocent, would decline to involve himself in the illicit transaction, and instead refer the undercover officer to a treatment center for his significant other. The trial court correctly determined that this question is best left in the hands of the jury, as the ultimate trier of fact. Rice is due no relief on this argument.

After reviewing Rice's arguments and his application for relief, we conclude that none of his requests have merit, and therefore affirm.

Order affirmed. Application for relief denied without prejudice to raise the arguments in the trial court. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/18/2016