J-S12032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENYATTA GENE BROOKS, | : | |
| | : | |
| Appellant | : | No. 845 MDA 2016 |

Appeal from the Judgment of Sentence March 31, 2016
in the Court of Common Pleas of Dauphin County,
Criminal Division, No(s): CP-22-CR-0006494-2014

BEFORE: PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 23, 2017**

Kenyatta Gene Brooks ("Brooks") appeals the judgment of sentence imposed following his conviction of three counts of unlawful delivery of a controlled substance (heroin), and one count of criminal use of a communication facility.[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history of this case, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 9/26/16, at 1-4.

The trial court denied Brooks's post-sentence Motion on April 18, 2016. Brooks thereafter filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Brooks raises the following issue for our review:  "Did not the trial court err in refusing to find entrapment as a matter of law, where

_____

[1] **See** 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 7512(a).

the court correctly found that the issue of entrapment had been properly raised, and there was no dispute as to the operative facts relating to the defense?" Brief for Appellant at 5 (capitalization omitted).

Brooks contends that he bought drugs from third parties with money provided by the police to a confidential informant, Kimberly Staub ("Staub"), "only after Staub feigned friendship and had sex with him to gauge his potential as a target for her [confidential information] activities." *Id*. at 23. Brooks asserts that "feigning friendship – especially with sexual favors – and then exploiting that friendship can create an entrapment situation." *Id*. at 25. Brooks argues that Staub was motivated by her need to establish targets for Detective James McBride ("Detective McBride"), noting that Staub had approached Detective McBride before she and Brooks had met in person. *Id*. at 26.

In its Opinion, the trial court addressed Brooks's issue, set forth the relevant law, and determined that the issue lacks merit. *See* Trial Court Opinion, 9/26/16, at 4-7. We agree with the trial court's determination that Brooks failed to prove entrapment as a matter of law, as the record discloses no egregious conduct by the police that would rise to the level required to find entrapment as a matter of law. *See id*. at 6. Nothing in the record indicates the police originated, implanted, or induced the crimes committed by Brooks. *See Commonwealth v. Marion*, 981 A.2d 230, 241 (Pa. Super. 2009). We further conclude that the trial court did not err in submitting the

question of entrapment to the jury. *See* Trial Court Opinion, 9/26/16, at 5-6. Accordingly we affirm Brooks's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2017

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                                                 : DAUPHIN COUNTY, PENNSYLVANIA
                                                                 :
                                                                 :
                            vs.                                  : NO. 6494-CR-2014
                                                                 :
                                                                 :
KENYATTA GENE BROOKS                            :

## MEMORANDUM OPINION

On March 31, 2016, following a jury trial, Defendant Kenyatta Brooks was convicted of

unlawful delivery of a controlled substance and criminal use of a communication facility.

Defendant was sentenced to an aggregate term of imprisonment of three and one-half (3 ½) to

fifteen (15) years. Defendant's post-sentence motion was denied, and this appeal followed.

Defendant raises two issues in his statement of matters complained of on appeal:

1. This Court erred in refusing to find entrapment as a matter of law.

2. This Court erred in denying Defendant's motion to challenge several jurors
   for cause because of their responses on the written juror questionnaire.

The following evidence was adduced at trial. Agent James McBride testified for the

Commonwealth. Agent McBride is a narcotics agent with the Pennsylvania Office of Attorney

General. [Jury Trial, Notes of Testimony, Vol. II, March 15, 2016, pp. 18-19]. Agent McBride

testified that he has conducted "thousands" of controlled-buy drug investigations. [N.T., Vol. II,

3-15-16, p. 23]. In May of 2014, Kimberly Staub contacted Agent McBride about assisting him

in the capacity of a confidential informant (CI). Miss Staub advised that in return for her help,

she was hoping to get some leniency for her son who had been arrested in York on DUI charges.

Agent McBride explained to Ms. Staub that any help she could offer as a CI could not be used to

help her son. [N.T., Vol. II, 3-15-16, pp. 25-26]. Instead, Miss Straub opted to offer help as a CI

for compensation. Agent McBride had known Miss Staub for approximately fifteen years. She

1

and her former husband were some of the first individuals Agent McBride used as CIs when he worked for the York City Police Department. Miss Straub helped with the arrests and convictions of at least a dozen individuals for drug-related offenses. [N.T., Vol. II, 3-15-16, p. 85].

Prior to the first drug buy, Miss Straub signed a memorandum of consent to have her conversations recorded. On June 27, 2014, Agent McBride and Agent Lauren Diller met with Miss Straub, searched her and her vehicle, and had her place a consentualized phone call to Defendant. Agent McBride then gave Miss Straub $1,000 in official FBI funds, along with a monitor recorder to keep on her person. [N.T., Vol. II, 3-15-16, pp. 26-32]. The agents followed Miss Straub to Hamilton Street in Harrisburg, where she was met by Defendant, who arrived in another vehicle. Defendant got into Miss Straub's car, then returned to his vehicle and began to travel South on Front Street. Miss Straub followed Defendant and the agents followed both of them to the back of the Harrisburg Mall. Defendant then traveled to a nearby apartment complex, where he parked his vehicle in the parking lot. A skinny Hispanic male was standing near apartment 3302. Defendant got out of his car, walked over to this individual, and entered the apartment. [N.T., Vol. II, 3-15-16, pp. 33-37]. Agent McBride then observed an older, bald Hispanic man pull up to the apartment, enter the apartment, and leave in a short period of time. After that individual left, Defendant exited the building, went back to his car, and headed back to the mall area to meet Miss Straub. [N.T., Vol. II, 3-15-16, p. 38]. The two of them pulled into a Pizza Hut parking lot, where their car windows were facing each other. Defendant made a motion towards Miss Straub's window like he was throwing something in, and he told her to put it in between her legs. Defendant departed, heading south on Mall Road, and Miss Straub went north and met the agents back at their office. Once there, she turned over the purchased drugs

2

and body recorder, and was searched by Agent Diller. The 100 packets received tested positive for heroin. [N.T., Vol. II, 3-15-16, pp. 38-41].

Agent McBride went on to testify about three other controlled buys using Miss Straub as the CI, specifically, August 15th, August 19th, and September 5th, 2014. Each of these buys was conducted in the same manner as the June 27th operation, including the same apartment entrance location and the same Hispanic individuals. In each instance Defendant delivered heroin to Miss Straub. [N.T., Vol. II, 3-15-16, pp. 45-81]. The testimony of Agent Courtney Vanorden, Agent Isaac Caraway, and Agent Lauren Diller all supported Agent McBride's testimony regarding the drug buys. [N.T., Vol. II, 3-15-16, pp. 124-131] [N.T., Vol. III, 3-16-16, pp. 3-24].

Kimberly Staub, the CI, took the stand and described her relationship with Defendant Brooks. Prior to the drug buys involving Defendant, Miss Staub had met him about one year prior on an online website called Tag. The first time she met Defendant in person was in June of 2014. [N.T., Vol. III, 3-16-16, pp. 27, 29]. When asked if she were sexually intimate with Defendant, Miss Staub answered "yes." [N.T., Vol. III, 3-16-16, p. 29]. She further described their relationship during that time as "friends," as opposed to "boyfriend/girlfriend." [N.T. Vol. III, 3-16-16, p. 30]. Miss Staub testified that she and Defendant only slept together twice, and both times were in the beginning of June of 2014. [N.T., Vol. III, 3-16-16, p. 32]. At some point in the middle of June Miss Staub learned that Defendant could get her drugs. [N.T., Vol. III, 3-16-16, p. 30]. Miss Staub contacted Agent McBride and, consistent with Agent McBride's testimony, inquired about helping him in hopes of getting leniency for her son's criminal charges. [N.T., Vol. III, 3-16-16, p. 31].

Miss Staub maintained contact with Defendant up until and during the drug buys. She testified that they talked every day, and would meet up at hotel rooms. Miss Staub testified that,

3

"[O]ne time [Defendant] had come to the hotel; he asked me to contact my person that I sell to and see if he could, you know, if he wanted anything, if he wanted any weed or if he wanted herion. He had some he wanted to get rid of because he insisted on me helping him to get a block of cocaine." [N.T., Vol. III, 3-16-16, pp. 33-34]. Miss Staub said that they would go to a hotel mainly because Defendant wanted her to buy him food, and so that they would have a place to sleep. [N.T., Vol. III, 3-16-16, p. 34]. Miss Staub also admitted to have "sexted" with Defendant on occasion and that they smoked marijuana together while they were in the hotel rooms. [N.T., Vol. III, 3-16-16, p. 65]. She also admitted to sharing health-related information about herself to Defendant, and he would share information about his mother's health issues. [N.T., Vol. III, 3-16-16, p. 63]. Miss Staub testified that Defendant made it clear that he did not desire an intimate relationship with her. [N.T., Vol. III, 3-16-16, p. 83]. She declined to categorize their relationship as either close friends or best friends. [N.T., Vol. III, 3-16-16, p. 84]. Miss Straub also stated that she did not "set up" Defendant. Rather, Defendant was the one to approach Miss Staub about getting/buying drugs from him and told her he could get whatever she wanted. [N.T., Vol. III, 3-16-16, p. 84]. When asked if Miss Straub ever asked Defendant to get her some drugs, she replied, "No. He said, 'let's make money together,' and he would tell me about how if we made enough money we could get the block of cocaine, he could flip it and he could make three times the amount and he would share it with me." [N.T., Vol. III, 3-16-16, p. 84].

The Crimes Code defines the defense of entrapment in relevant part as follows:

§ 313. Entrapment
(a) General Rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

4

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
(b) Burden of Proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b). Generally, the police are permitted to use trickery and deception in catching criminals. Entrapment occurs when the police use tactics that might lead a law-abiding person to commit a crime. Thus, the inquiry should focus on the conduct of the police and not on the defendant's prior criminal activity or other indicia of a predisposition to commit crime. *Commonwealth v. Weiskerger*, 554 A.2d 10, 13 (Pa. 1989); *see also Commonwealth v. Willis*, 990 A.2d 773, 775 (Pa. Super. 2010). However, "[w]here police 'do no more than afford [a defendant] an opportunity' to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense." *Commonwealth v. Marion*, 981 A.2d 230, 239, (Pa. Super. 2009).

"[T]he determination of whether police conduct constitutes entrapment is for the jury, unless the evidence of police conduct clearly establishes entrapment as a matter of law.... Thus, after the defense of entrapment has been properly raised, the trial court should determine the question as a matter of law wherever there is no dispute as to the operative facts relating to the defense." *Commonwealth v. Lucci*, 443 Pa. Super. 431, ___, 662 A.2d 1, 3 (1995), *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1995) (quoting *Commonwealth v. Thompson*, 484 A.2d 159, 163–64 (Pa. Super.1984)). *See, e.g., Commonwealth v. Mance*, 619 A.2d 1378 (Pa. Super.1993), *aff'd*, 539 Pa. 282, 652 A.2d 299 (1995) (holding matter of entrapment properly submitted to jury where operative facts are disputed).

5

Here, this Court correctly left the question of entrapment to the jury, because the operative facts were in dispute and the police conduct did not establish entrapment as a matter of law. The case law outlining the degree and nature of entrapment needed to be found by this Court to establish it as a matter of law does not indisputably exist herein. The Court, however, did submit the entrapment consideration to the fact-finders to resolve the disputed facts and weigh the totality of the ongoing relationship in light of all the communications and contacts. After a proper instruction on the entrapment defense, the jury convicted Defendant on the charged drug offenses.

Contrary to Defendant's assertion, this case does not contain egregious conduct by the police that would rise to the level required to find entrapment as a matter of law. *See Commonwealth v. Marion*, 981 A.2d 230 (2009) (even if the CI used his friendship with appellant to induce the sale of drugs, the case is entirely devoid of any further egregious conduct); *Commonwealth v. Zingarelli*, 839 A.2d 1064 (Pa. Super. 2003), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004) (providing opportunity without attempting to overcome [defendant's] reason and good sense does not rise to level of outrageousness necessary to find entrapment as matter of law).

Instead, egregious conduct has been found where false pretenses are used to secure a defendant's confidence and implant in an innocent person's mind the disposition to commit a crime. *See Lucci, supra,* 662 A.2d at 7–8; (holding outrageous and egregious police conduct constituted entrapment as matter of law where confidential informant was defendant's very close friend, confidential informant knew defendant had just returned from drug rehabilitation, confidential informant appealed to bonds of friendship and sympathy engendered by his mother's alleged impending death, and repeatedly approached defendant about selling drugs in exchange

6

for "free high"); *Commonwealth v. Borgella,* 531 Pa. 139, 611 A.2d 699 (1992) (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs); *Commonwealth v. Wright,* 578 A.2d 513 (Pa.Super.1990) *(en banc ), appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991) (holding entrapment established as matter of law where police helped informant cultivate false friendship with defendant in order for informant to persuade defendant to purchase and supply drugs). Here, there was no error in allowing the jury to decide the issue of entrapment. Furthermore, there was no entrapment as a matter of law.

Defendant next claims that this Court erred in denying Defendant's motion to challenge several jurors for cause. The record reflects that any such negative inference was cured by this Court's instruction on the matter. Prior to swearing in the jury, defense counsel indicated that four jurors indicated in the written question and answer form that they would not be able to follow the law with respect to Defendant's constitutional right to remain silent. [N.T., Vol. I, 3-14-16, p. 4]. At that point, this Court denied the strike for cause as premature until the completion of the *voir dire* process. [N.T., Vol. I, 3-14-16, p. 6]. After the prospective jury members were sworn in, this Court explained the following on the record:

> Before we get to the nuts and bolts of this case and allow the attorneys to ask questions, there was a questionnaire that you filled out. And, in fact, that questionnaire was filled out intentionally. The Pennsylvania Supreme Court created a committee...so that it would bring to light certain questions that may help us discuss with you, as jurors, the laws that pertain to criminal law that might not apply to civil law or other aspects of your daily lives.

> One of the concerns is that one of the answers that some of you may have put down was that you would hold it against the defendant before the defendant would not testify during a trial.

·7

What is important is that you understand in criminal law, it is not a situation where you are trying to necessarily weigh one party against another. In a criminal case, the charges are brought by the Commonwealth, and it is the obligation of the Commonwealth to prove beyond a reasonable doubt each and every element of the crime charged against the defendse.

The defendant is not required to testify or to bring forth any evidence or testimony in his own defense because the burden always lies on the Commonwealth.

If the defense wishes to put individuals on to testify, the Commonwealth, obviously, can cross-examine anybody brought forward. But under our criminal law, the defendant is presumed innocent through the trial and remains innocent unless and until a jury of his peers, or 12 individuals, find unanimously that the Commonwealth has proven him guilty beyond a reasonable doubt.

And again, that is never on the defendant. So, if the defendant chooses not to testify, as a matter of law, you cannot hold that against the defendant. The defendant, just like anyone, has the right to remain silent, and the whole purpose is because it is a criminal action where the Commonwealth must prove their case beyond a reasonable doubt.

To those of you who have an issue with that, the question would be: Can you set aside your personal belief that you would like to hear form the person or that you would like to hear from as many people as possible; can you set that aside and follow the law as I just prescribed it, holding the Commonwealth to the burden of proof beyond a reasonable doubt for each and every element and not hold it against the defendant should he choose not to testify?

Is there anyone that cannot follow that?

(no response).

I see and hear no response. With that then, counsel, you are allow to expound upon it further if you wish during *voir dire*.

[N.T., Vol. I, 3-14-16, pp. 10-12].

It is well established that the scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. Similarly, the trial court possesses discretion to determine whether counsel may propose their own questions of potential jurors during *voir dire. Commonwealth v. Mattison,* 82 A.3d 386, 397 (Pa. 2013) (citations omitted).

8

Given this Court's thorough explanation of Defendant's constitutional right to remain silent, and noting that all of the potential jurors indicated that they understood and could follow the law as presented, there was no error in the denial of defense counsel's challenge.

BY THE COURT:

_____
Scott Arthur Evans, Judge

DATED: September 26, 2016

Distribution:
District Attorney's Office
James J. Karl, Esq., Public Defender's Office
Prothonotary, Superior Court of Pennsylvania
Chambers of Judge Scott Arthur Evans

9