J-S02027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES F. HOLMES | : | |
| | : | |
| Appellant | : | No. 441 MDA 2022 |

Appeal from the PCRA Order Entered February 18, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0002155-2015

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                          **FILED MAY 8, 2023**

Appellant, James F. Holmes, appeals *pro se* from the February 17, 2022 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

A panel of this Court previously summarized the relevant facts of this case as follows:

> Following his arrest, Appellant, who was represented by counsel, proceeded to a jury trial on June 1, 2017.  At trial, M.H. testified [that in November and December 2014, she posted photos of her infant daughter, who was born in November 2014, on Facebook].  M.H. indicated that, on December 13, 2014, she began having a conversation on Facebook with a person who identified himself as "Craig Jones."  The parties stipulated at trial that "Craig Jones" was actually Appellant.  M.H. testified that she later permitted the Pennsylvania State Police to access her Facebook account and download the messages.
>
> At trial, M.H. read the messages into evidence.  The transcript contains numerous references to obscene messages from Appellant relating to inappropriate sexual contacts with a baby.

\*\*\*

[In addition,] M.H. testified that, at some point in 2015, after making plans to meet Appellant, who believed M.H. was going to bring her [infant] daughter, M.H. traveled on a bus with law enforcement officers. Upon arrival at the bus station where she was supposed to meet Appellant, M.H. watched as the police arrested Appellant.

\*\*\*

[Similarly,] Pennsylvania State Police Corporal Jeffrey Vilello, who has been in law enforcement for [21] years and is certified to conduct interceptions/electronic surveillance, testified that, in December [] 2014, he interviewed M.H. in connection with an investigation unrelated to the instant case. Thereafter, in early November [] 2015, M.H. showed Corporal Vilello her Facebook communications, which M.H. had with "Craig Jones" in December [] 2014. Believing "Craig Jones" was soliciting sexual activity with children, Corporal Vilello asked M.H. to work as an informant and assist the State Police in identifying "Craig Jones." M.H. agreed.

Corporal Vilello indicated that, posing as M.H., he began communicating with "Craig Jones" (later identified as Appellant) *via* Facebook. Also, "[M.H.'s] phone was . . . used under [the corporal's] direction and use[d] to communicate with the individual who was portraying himself through Facebook as Craig Jones." Specifically, Corporal Vilello testified that, on November 4, 5, and 6, 2015, posing as M.H., he used M.H.'s [cellular telephone] to communicate with Appellant *via* text. He noted the police computer unit extracted the text messages from M.H.'s [cellular telephone] and saved them.

\* \* \*

[Specifically, Corporal] Vilello testified that, posing as M.H., he communicated with Appellant *via* text for approximately a month, and at some point, they made arrangements for M.H., as well as her [infant] daughter, to travel by bus to visit Appellant. [Corporal] Vilello indicated Appellant "was pretty insistent that [M.H.] bring the child." Also, in a telephone conversation between Appellant and M.H. regarding the upcoming visit, Appellant asked M.H. if he could adopt M.H.'s daughter if M.H. decided not to live with Appellant.

[Corporal] Vilello testified that he accompanied M.H., who carried a doll that looked like a baby, on the bus to visit Appellant on December 4, 2015. [Corporal Vilello] indicated that, after M.H. exited the bus, Appellant approached, grabbed her by the arm, and said, "let's go [M.H.]."

At this point, Appellant was arrested, and his iPhone 4, which contained the messages indicated **supra**, was seized from his person. [Corporal] Vilello noted that, during the bus ride, posing as M.H., he sent messages to Appellant, and the last message he had sent was "pictured on [Appellant's] iPhone 4." He testified the police executed a search warrant on Appellant's iPhone 4 and extracted the communication, including text messages and photographs, between Appellant and M.H.'s phone. [Corporal] Vilello noted that, during the Facebook communication and text messages, Appellant never revealed his true identity and, when asked, he refused to send a picture of himself.

**Commonwealth v. Holmes**, 2019 WL 3205784, at *1–4 (Pa. Super. July 16, 2019) (internal citations and footnotes omitted).

Ultimately, the jury convicted Appellant of six counts of criminal solicitation (to commit involuntary deviate sexual intercourse with a child, sexual assault, sexual exploitation of children, aggravated indecent assault on a child, sexual abuse of children, and indecent assault on a person less than 13 years of age), one count of trafficking in minors, and one count of criminal use of a communication facility. **Id.** at *1. Appellant was sentenced to an aggregate term of 13 to 26 years' imprisonment, followed by one year probation. **Id.** at n.4. Appellant filed a timely, counseled post-sentence motion, which was denied by operation of law. **Id.** at *4. This Court affirmed Appellant's judgment of sentence on July 16, 2019. **Id.** at *12. On February 12, 2020, our Supreme Court denied Appellant's petition for allowance to

appeal. ***Commonwealth v. Holmes***, 224 A.3d 1266 (Pa. 2020). Therefore, Appellant's judgment of sentence became final on May 12, 2020. ***See*** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking a review"); ***see also*** U.S. Sup. Ct. R. 13(1) (stating, "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review"); ***see also*** 42 Pa.C.S.A. § 9545(b)(3).

On June 15, 2020, Appellant filed a *pro se* petition for *habeas corpus* relief, which was treated as a PCRA petition. ***See*** PCRA Court Opinion and Order, 2/17/22, at 6. On June 22, 2022, the PCRA court appointed counsel but, because "that attorney later terminated his PCRA contract with Lycoming County," the PCRA court subsequently appointed Trisha Hoover Jasper, Esq., as Appellant's new PCRA counsel. ***Id.***; ***see also*** PCRA Court Order, 8/26/20, at 1.

On October 20, 2020, Appellant, through counsel, sought leave to withdraw the June 15, 2020 petition. On October 29, 2020, Appellant "was granted leave to withdraw his petition in order to later 'file a more comprehensive PCRA that raise[d] all of his issues.'" PCRA Court Opinion and Order, 2/17/22, at 6. Appellant filed a subsequent *pro se* PCRA petition on

February 16, 2021. On February 24, 2021, the PCRA Court again appointed Attorney Jasper to serve as Appellant's PCRA counsel. On July 9, 2021, however, Attorney Jasper filed a motion to withdraw, as well as a **Turner/Finley** "no merit" letter.[1] Appellant filed a *pro se* response on December 29, 2021.[2]

On January 6, 2022, the PCRA court held a hearing on Appellant's petition, as well as Attorney Jasper's **Turner/Finley** letter. At the hearing, Attorney Jasper conveyed her opinion regarding the merits of Appellant's claims and Appellant offered argument in support of his petition. On February 17, 2022, the PCRA court entered an order granting Attorney Jasper leave to withdraw and denying Appellant's petition. PCRA Court Opinion and Order, 2/17/22, at 1-40. This appeal followed.[3]

Appellant raises the following issues on appeal:

1. Did the PCRA [c]ourt err in finding "no merit" to the claim of actual innocence?

_____

[1] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **see also Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1998).

[2] Appellant entitled his response "Oral Brief in Response to No Merit Claim."

[3] Appellant filed his notice of appeal on March 14, 2022. On March 21, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 3, 2022. All issues raised on appeal were included in Appellant's concise statement.

2. Did the PCRA [c]ourt err in finding "no merit" to the claim that the arrest warrant affidavit contained material omission[s] that denied the determinat[ion] of due process?

3. Did the PCRA [c]ourt err in finding "no merit" to the claim that [] Appellant was unlawfully arrested and his iPhone[] 4 [was] illegally seized?

4. Did the PCRA [c]ourt err in finding "no merit" [to Appellant's] claim that the trial court denied [] Appellant [his] right to counsel?

5. Did the PCRA [c]ourt err in finding "no merit" [to Appellant's] claim that the venue for the charges and trial took place in an unlawful jurisdiction and was unconstitutional?

6. Did the PCRA [c]ourt err in finding "no merit" [to Appellant's] claim that [trial] counsel was ineffective during the pretrial and trial phases of the judicial process?

7. Did the PCRA [c]ourt err in finding "no merit" [to Appellant's] claim that direct appeal counsel was ineffective?

8. Did the PCRA [c]ourt err in finding "no merit" to the claim that PCRA counsel was ineffective and the court erred in [failing to] appoint substitute counsel after this claim was filed?

Appellant's Brief at 2.[4]

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

> We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the

_____

[4] We have reordered Appellant's issues for ease of discussion and disposition.

PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Moreover,

[t]o be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* Additionally, [an] appellant must show his claims have not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." 42 Pa.C.S.[A.] § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.[A.] § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.[A.] § 9544(b).

*Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017) (some citation omitted).

Preliminarily, we observe that Appellant's first five issues are either previously litigated or waived. Indeed, in his first issue, Appellant claims the PCRA court erroneously found "'no merit' to [his] claim of actual innocence." Appellant's Brief at 8. In support of this claim, Appellant contends that, prior to his arrest, he "renounce[d]. . . the solicitations" by "agree[ing] with M.H. that she did not need to bring her child when they met." *Id.* This fact-based

claim is not raised within the context of a challenge to trial counsel's effectiveness and, thus, could have been litigated on direct appeal. Similarly, in Appellant's second and third appellate issues, Appellant sets forth freestanding contentions regarding the affidavit of probable cause for his arrest warrant, his arrest, and the subsequent search of his cellular telephone. Again, neither argument is paired to a claim alleging ineffective assistance of trial counsel and they, too, could have been raised on direct appeal. Lastly, Appellant's fourth and fifth issues raise issues of trial court error. Because each of these issues could have been raised on Appellant's direct appeal, Appellant's first five issues are waived. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*) ("At the PCRA stage, claims of trial court error are either previously litigated (if raised on direct appeal) or waived (if not).")

Appellant's remaining claims generally involve allegations of the ineffective assistance of counsel. "[C]ounsel is presumed effective, and [the appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014), *quoting Commonwealth v. Steele*, 961 A.2d 786, 796 (Pa. 2008). To prevail on an ineffectiveness claim, an appellant must establish:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Lesko*, 15 A.3d 345, 373–374 (Pa. 2011), *citing* *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Failure to meet any prong of the test will defeat an ineffectiveness claim. *Commonwealth v. Rainey*, 928 A.2d 215, 224–225 (Pa. 2007). Counsel cannot be deemed ineffective for failure to assert a baseless claim. *Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa. Super. 2002).

Furthermore, to demonstrate prejudice, Appellant must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Commonwealth v. Spotz*, 870 A.2d 822, 833–834 (Pa. 2005). When it is clear that a petitioner's ineffective assistance claim has failed to meet the prejudice prong of the ineffectiveness test, the claim may be dismissed on that basis alone, without a determination of whether the first two prongs have been met. *Rainey*, 928 A.2d at 224-225; *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998) ("If it is clear that [the a]ppellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met.").

In his sixth issue, Appellant alleges that trial counsel, Michael Morrone, Esq., provided ineffective assistance, citing several facets of counsel's supposedly deficient performance. First, Appellant argues Attorney Morrone failed to "present[] defenses of renunciation, entrapment and outrageous police conduct." Appellant's Brief at 19. Next, Appellant argues that Attorney

Morrone was ineffective for failing to object to the violation of his Sixth Amendment right to counsel when (1) a "deputy sheriff . . . accompan[ied] counsel and [Appellant] in the judge's chambers" during a conference at trial and because (2) he "never stipulated to the suppression of certain messages from Facebook and [] texts in open court[,] without a jury present." *Id.* at 19-20. Moreover, Appellant challenges Attorney Morrone's decision to allow Corporal Vilello "to testify out of court unchallenged," his attempt "to bring forth a prohibited witness to prove [] Appellant did not abuse his son," and his failure "to refer to the actual . . . text[] message, message 17, that [] establish[ed that] Appellant did not abuse his son." *Id.* at 20. Finally, Appellant argues that Attorney Morrone "appeared to be confused, distracted, or disoriented [during trial] because his questioning of witnesses was rarely concise and the trial judge required clarification on numerous occasions." *Id.* We will address Appellant's claims in turn.

First, we address Appellant's claim regarding trial counsel's failure to present a renunciation defense. In particular, Appellant argues Attorney Morrone "was aware or should have been aware of the material facts supporting" Appellant's alleged renouncement but failed to "establish a claim of renunciation nor did he seek jury instructions regarding that defense." Appellant's Brief at 17. In support of his claim of renouncement, Appellant argues, essentially, that he lacked specific intent because he believed M.H.'s child "was fake." *Id.* at 18. Upon review, we conclude Appellant's claim lacks merit.

The Crimes Code defines the defense of renouncement, in relevant part, as follows:

**(c) Renunciation.--**

(1) In any prosecution for an attempt to commit a crime, it is a defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof.

18 Pa. C.S.A. § 901(c)(1).  Put simply, renunciation "requires a showing that the defendant avoided the commission of the crime attempted by abandoning his criminal effort."  ***Commonwealth v. Zingarelli***, 839 A.2d 1064, 1072 (Pa. Super. 2003).

As explained by the PCRA court, the Commonwealth presented Facebook messages between Appellant and M.H. indicting that Appellant "did in fact know that [M.H.] had a baby."  PCRA Order and Opinion, 2/17/22, at 11.  Specifically, the PCRA court pointed to evidence that Appellant "ask[ed] how the baby [was] doing," made obscene comments regarding M.H.'s baby, and "insist[ed M.H.] bring the baby with her to meet him."  ***Id***.  Further, as indicated by this Court on Appellant's direct appeal, in various text messages between Appellant and M.H., "Appellant asked M.H. to come and visit him, and he insisted [M.H.] bring her infant daughter." ***Holmes***, 2019 WL 3205784 at *9.  Hence, contrary to Appellant's claim, there was ample record evidence that Appellant did, in fact, believe that M.H.'s child was real, that Appellant

- 11 -

demanded M.H. bring her infant child to visit him, and that Appellant met M.H. as previously agreed prior to his arrest, all of which refute Appellant's claims of renouncement. Attorney Morrone was not ineffective in failing to raise a meritless defense and, as such, Appellant's claim fails. **See Payne**, 794 A.2d at 906 (explaining that counsel cannot be found ineffective for failure to assert a baseless claim).

In this same vein, Appellant argues Attorney Morrone "could have used [] Facebook and [] text messages to establish that both [M.H.] . . . and [Corporal] Vilello made initial and unprovoked solicitations" amounting to entrapment. Appellant's Brief at 18. Again, Appellant's claim lacks merit.

On Appellant's previous appeal, this Court summarized the law regarding entrapment, as well as the facts and evidence relevant to Appellant's entrapment defense as follows:

> The Crimes Code defines the defense of entrapment, in relevant part, as follows:
>
> ### § 313. Entrapment
>
> > (a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
> >
> > > (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
> > >
> > > (2) employing methods of persuasion or inducement which create a substantial risk that such an offense

will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof**.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(a)-(b) (footnote [omitted]).

Pennsylvania courts apply an objective test for entrapment:

[T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime.

*Commonwealth v. Marion*, 981 A.2d 230, 238 (Pa. Super. 2009) (quotation and citation omitted).

As we have explained:

[T]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

*Id.* at 238 (quotation and citation omitted).

"In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute." *Commonwealth v. Borgella*, 611 A.2d 699, 701 (Pa. 1992) (citation omitted).

- 13 -

Where police "do no more than afford [an] appellant an opportunity" to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. *Marion*, 981 A.2d at 238. Thus, the availability of the entrapment defense under the statute does not preclude the police from acting "so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation." *Id*.

\*\*\*

Here, there was evidence indicating that M.H. and Appellant had met each other some time prior to 2014. Specifically, Appellant, his wife, M.H., and M.H.'s boyfriend had sex in a hotel.

Beginning on December 13, 2014, M.H. began conversing with Appellant (who called himself "Craig Jones") *via* Facebook without any direction from the police. For instance, in a December 19, 2014, Facebook conversation, Appellant indicated he wanted M.H. to lick her infant daughter in front of Appellant, and he suggested having sex with M.H. in front of his five-year-old son. He also asked M.H. if she had "licked [her] daughter's p\*\*\*y yet[.]"

Thereafter, beginning in early November of 2015, M.H. contacted the police and showed them her Facebook account. She then agreed to work as an informant for the police and permit Corporal Vilello to assume her identity on Facebook and text for purposes of communicating with "Craig Jones" so that the police could determine his true identity. Corporal Vilello indicated he posed as M.H. on Facebook for "only a day," and since Appellant had provided his phone number to M.H., he posed as M.H. and began texting Appellant.

In the text messages, Appellant escalated the situation by requiring proof of M.H.'s loyalty and trust. Also, during the text messages, Appellant asked M.H. to come and visit him, and he insisted she bring her infant daughter.

*Holmes*, 2019 WL 3205784 at *9 (internal parallel citations and footnotes omitted).

- 14 -

In contrast to Appellant's claims, the messages exchanged via Facebook and by text do not show that M.H. and Corporal Vilello made "unprovoked solicitations" amounting to entrapment. *See* Appellant's Brief at 18. In fact, within the context of Appellant's direct appeal, this Court specifically found that, based upon the exchanges, "the jury properly determined Appellant did not meet his burden of proving by a preponderance of the evidence that his conduct occurred in response to an entrapment." *Holmes*, 2019 WL 3205784 at *9. As such, Appellant is not entitled to relief.

Finally, we conclude that Appellant failed to develop his remaining claims alleging that Attorney Morrone was ineffective within the context of the pre-trial and trial phases of the underlying criminal litigation. Instead, Appellant provides two or three rambling, confusing sentences in support of his contentions. Moreover, Appellant makes no effort, other than setting forth conclusory statements, to demonstrate how any of Attorney Morrone's alleged deficiencies prejudiced him. Appellant therefore failed to adequately explain, develop, or support his remaining claims of trial counsel ineffective assistance and, as such, is not entitled to relief. *Spotz*, 47 A.3d at 108 n.34 (dismissing some of the appellant's claims because his assertions were "not explained, not developed, and not supported factually or legally").

In his seventh issue, Appellant argues that his direct appeal counsel, Ryan Gardner, Esq., provided ineffective assistance. In particular, Appellant claims Attorney Gardner failed to file a brief in support of his post-sentence motion and, as such, was ineffective. Appellant Brief at 23. Next, Appellant

argues that Attorney Gardner provided ineffective assistance because he failed to preserve the issue of renouncement on appeal. *Id.* In this same vein, Appellant criticizes the manner in which Attorney Gardner presented Appellant's entrapment defense on appeal. *Id.* Finally, Appellant claims that Attorney Gardner's interests "diverge[d]" from that of his own after Attorney Gardner "decided to run for, was elected to, and took the office of District Attorney [of Lycoming County]." *Id.* at 24. This, combined with his failure to withdraw as Appellant's counsel while his appeal was pending, in Appellant's view, resulted in ineffective assistance. *Id.*

First, we conclude that Appellant's claim regarding Attorney Gardner's failure to file a brief in support of Appellant's post-sentence motion fails for lack of prejudice. Herein, Attorney Gardner filed a post-sentence motion on December 28, 2017. On the date set for argument, however, Attorney Gardner "had a critical medical emergency which prevented his appearance at the hearing." Trial Court Order, 4/20/18, at 1. As such, the trial court decided that the "matter [would] be submitted on briefs" and ordered Attorney Gardner to "submit a brief or written memorandum . . . on the issues that [were] the subject of the post-sentence motion" within 10 days of its order. *Id.* Attorney Gardner failed to submit a brief and Appellant's post-sentence motion was denied by operation of law. For this reason, Appellant argues Attorney Gardner provided ineffective assistance. Appellant, however, fails to set forth any argument demonstrating that, had Attorney Gardner filed a brief in support of Appellant's post-sentence motion, the outcome would have been

different, *i.e.*, the trial court would have granted Appellant's post-sentence motion. In fact, he provides no argument with respect to any prejudice suffered as a result of counsel's failure to file a brief. **See** Appellant's Brief at 23-24. Hence, Appellant's claim fails.

Next, Appellant, again, sets forth claims regarding the issue of his alleged renouncement, claiming Attorney Gardner was ineffective because, although he raised this issue on appeal, this Court determined the issue was waived for failure to include it in his court-ordered Pa.R.A.P. 1925(b) statement. **See** Appellant's Brief at 23; **see also Holmes**, 2019 WL 3205784 at *6. Similarly, Appellant takes issue with the manner in which Attorney Gardner presented his entrapment defense on appeal. **See** Appellant's Brief at 23. As explained above, however, Appellant's claims lack merit, and he is not entitled to relief.

Finally, Appellant claims Attorney Gardner failed to disclose his intention to run for and ultimately, his election to, the office of Lycoming County's District Attorney. Appellant's Brief at 23. This, per Appellant, resulted in a conflict of interest and, ultimately, ineffective assistance of counsel. **Id.**

The PCRA court addressed Appellant's contention as follows:

> Attorney Gardner won the primary election while this case was still on appeal with the Superior Court. Following the Superior Court's decision, Attorney Gardner properly and timely filed a [p]etition for [p]ermission [to a]ppeal with the Supreme Court and, prior to its denial, Attorney Gardner won the general election. There is no evidence that Attorney Gardner ever formally withdrew from the case or that [Attorney Gardner's partner, Christian] Lovecchio, [Esq.,] ever entered his appearance. However, upon his *pro se* filing of his initial PCRA

- 17 -

[petition], [Appellant] was appointed counsel to assist him with the PCRA process.

While the [c]ourt certainty understands [Appellant's] frustration, the fact remains that all of [his] appeal rights were preserved [and] . . . no conflict existed at the time Attorney Gardner was running for office. [Appellant] does not claim that Attorney Gardner is now improperly handling this matter a[s] the District Attorney, which would obviously be a conflict of interest. Based on the above timeline, it cannot be said that Attorney Gardner "abandoned" [Appellant] during his appeal. *See* [] *Commonwealth v. Bennett*, 930 A.2d 1264, 1274 (Pa. 2007) (finding that PCRA counsel abandoned the defendant when he failed to file a appellate brief on appeal). Additionally, Attorney Gardner's actions or inactions, *i.e.*, failing to notify [Appellant] of his intention to run for District Attorney, would not have changed the outcome of [his] appeal to the Superior Court or the Supreme Court's denial of his [p]etition for [p]ermission [to a]ppeal.

[Appellant] has not proved that he suffered any prejudice from Attorney Gardner's actions or inaction or that there is a reasonable probability that the outcome of either the Superior Court's decision or the Supreme Court's denial of *allocatur* would have been different had Attorney Gardner notified [Appellant] of his campaign for District Attorney. [Appellant] has failed to meet his burden [of proving ineffective assistance of counsel] and, therefore, his claim . . . is denied.

PCRA Court Order and Opinion, 2/17/22, at 32-33 (footnote omitted). We adopt this aspect of the PCRA court reasoning as our own. Based upon the foregoing, we conclude that Appellant is not entitled to relief with respect to his claim that Attorney Gardner provided ineffective assistance.

In his eighth issue, Appellant sets forth a claim of ineffective assistance against PCRA counsel, Attorney Jasper.[5]  In sum, Appellant's claim is confined to Attorney Jasper's decision to file a **Turner/Finley** letter, as opposed to representing him during the PCRA process.  Appellant's Brief at 25-27.

As this Court has explained, counsel seeking to withdraw in PCRA proceedings

> must review the case zealously.  **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

**Commonwealth v. Muzzy**, 141 A.3d 509, 510–511 (Pa. Super. 2016) (ellipses and citation omitted).

In this case, we conclude that Attorney Jasper fulfilled the procedural requirements for withdrawing as PCRA counsel and that the PCRA court properly concluded that Appellant's PCRA petition lacked merit.  Attorney Jasper provided Appellant with a letter thoroughly detailing her review of the

---

[5] Pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), a PCRA petitioner may, after a PCRA court denies relief, after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal.  We therefore possess the authority to review Appellant's claim regarding PCRA counsel's ineffectiveness, even though it was raised for the first time on appeal.

case and listing all of the issues Appellant wished her to review. In addition, Attorney Jasper engaged in a significant discussion regarding the merits of Appellant's claims. Lastly, she informed Appellant of his right to proceed *pro se* or obtain new counsel. The PCRA court held a hearing regarding Appellant's petition and only granted Attorney Jasper leave to withdraw and denied Appellant's petition after hearing from Attorney Jasper and Appellant. Moreover, the PCRA court prepared a lengthy and thorough opinion setting forth the reasons why Appellant's PCRA petition lacked merit. **See** PCRA Court Opinion and Order, 2/17/22. Thus, Appellant's claim regarding PCRA counsel's ineffectiveness is baseless.

In his final issue, Appellant's argues that the PCRA court erred in failing to appoint new counsel after PCRA counsel filed a **Turner/Finley** letter and after she was permitted to withdraw. This Court has previously stated, however, that "once the court permits PCRA counsel to withdraw after filing a **Turner/Finley** 'no-merit' letter, an appellant is no longer entitled to the appointment of counsel on appeal." **Commonwealth v. Shaw**, 217 A.3d 265, 268 n.3 (Pa. Super. 2019), *citing* **Commonwealth v. Rykard**, 55 A.3d 1177 (Pa. Super. 2012) (explaining that if a proper **Turner/Finley** no-merit letter is filed, new counsel shall not be appointed, and an appellant must look to his own resources for future proceedings). Hence, no error occurred, as Appellant was no longer entitled to counsel.

Order Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2023