**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES HOWARD FOWLER | : | |
| | : | |
| Appellant | : | No. 156 WDA 2024 |

Appeal from the PCRA Order Entered January 4, 2024
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000458-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES HOWARD FOWLER | : | |
| | : | |
| Appellant | : | No. 579 WDA 2024 |

Appeal from the PCRA Order Entered January 4, 2024
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000459-2015

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: May 9, 2025**

Appellant, James Howard Fowler, appeals from the order entered in the McKean County Court of Common Pleas, which denied this first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

The Commonwealth charged Appellant with various drug offenses under two docket numbers in connection with two incidents where Appellant sold cocaine to a confidential informant, Michelle King. The charges at both dockets were tried together at a jury trial that commenced on June 6, 2016. Chief County Detective Ryan Yingling testified that Ms. King sold ecstasy to a confidential informant in 2013 and was not arrested or charged with a crime at the time. Due to the possibility that charges could be filed against her, Ms. King agreed to act as a confidential informant for the McKean County Drug Taskforce. In early March of 2015, Detective Yingling contacted Ms. King and asked her to identify individuals from whom she could purchase drugs. Ms. King identified Appellant and was authorized to proceed to set up a controlled buy.

On March 25, 2015, Ms. King contacted Detective Yingling and told him that she could purchase cocaine from Appellant. Later that day, Detective Yingling and various other officers set up to execute the controlled buy. Ms. King received a phone call from Appellant, and he asked her to pick him up from a local establishment. Ms. King picked up Appellant, drove to his house, went inside, purchased .8 grams of cocaine, exited Appellant's residence, and drove to a location to meet the officers. Ms. King was searched immediately prior to meeting with Appellant, watched by officers as she drove to and returned from Appellant's residence, and searched again after she reported back to the officers. The .8 grams of cocaine that she purchased from Appellant was packaged in a clear plastic bag that was created from cutting the corner of a plastic sandwich bag. Detective Yingling testified that this is a

common form of packaging for the sale of one gram of cocaine.

Ms. King reported that while she was at Appellant's house, he showed her a white grocery bag, containing three larger bags of cocaine. Appellant offered to sell her one of the bags, which contained approximately an ounce of cocaine. Detective Yingling authorized Ms. King to set up another sale to purchase the additional bag of cocaine. On March 31, 2015, Ms. King contacted Detective Yingling and confirmed that Appellant agreed to sell her an ounce of cocaine on April 1, 2015. On April 1, 2015, Detective Yingling and several other officers followed the same procedure as the previous controlled buy. In addition, Ms. King wore a recording device on her person. Ms. King called Appellant, who reported that he was at the same local establishment and inquired when Ms. King would come pick him up. Ms. King picked up Appellant, drove to his house, went inside, and purchased 15.31 grams (approximately half an ounce) of cocaine. Ms. King informed Detective Yingling that the transaction was completed and that she and Appellant would be leaving the house together in her car. The officers initiated a traffic stop and arrested Appellant. Upon searching Appellant's person, the officers recovered eight bags of cocaine, packaged similarly to the .8 gram of cocaine purchased by Ms. King during the previous controlled buy.

Meanwhile, immediately after Appellant left his house, the officers secured the house and executed a search warrant. In the laundry room, the officers found a white plastic grocery bag containing three clear knotted bags filled with 82.27 grams of cocaine. Detective Yingling and multiple other

officers testified that based on their training and experience, this amount of cocaine is not typically kept for personal use but for sale. The officers also found a digital scale in the kitchen, which had cocaine and marijuana residue on it. Under a cutting board, the officers found a piece of cardboard which had several names and dollar amounts listed on it, which the officers understood to be a ledger of amounts owed. Next to the cutting board, the officers found a plastic bag containing 64 sandwich bags with their corners cut out. Detective Yingling testified that the size of the packaging of the eight bags of cocaine found on Appellant's person matched the size of the missing corners. During cross examination, in an attempt to establish that Appellant was not on law enforcement's radar before Ms. King identified him, Appellant's counsel asked Detective Yingling, "[I]n, March of 2015, you had no personal knowledge of any drug involvement of [Appellant], is that correct?" (N.T. Trial, 6/6/16, at 241). Detective Yingling responded, "That is not correct." (*Id.*)

The Commonwealth additionally played the video recorded by Ms. King during the controlled buy. In the video, Appellant asks Ms. King what she wants, and she responds by asking Appellant whether he could sell her a half ounce or a whole ounce of cocaine. Appellant states that he could sell her a half ounce. When they arrive at Appellant's house, Ms. King waits in the kitchen while Appellant goes to a different room to retrieve the cocaine. Appellant returns with a bag of cocaine, weighs it on a digital scale, and tells Ms. King that he will sell it to her for $800.00. Appellant then tells Ms. King

that he needs money and asks if she wants a couple hundred hits of acid. Ms. King then gives Appellant $800.00 and Appellant gives her the bag of cocaine. Ms. King testified that she understood Appellant's question about acid to mean that he was offering to sell her acid.

Ms. King testified that she got to know Appellant well in 2012. Throughout 2013 and the first half of 2014, Ms. King spent a lot of time with Appellant. She did not move in or have a key to Appellant's house but there was a period of time when she often spent nights at Appellant's house and kept some personal effects there. In the middle of 2014, Ms. King entered into a relationship with another man, and she did not spend as much time with Appellant. However, Appellant and Ms. King were still friendly and maintained regular communication. In late February or early March of 2015, after Ms. King spoke with Detective Yingling, Ms. King called Appellant and set up the controlled buy on March 25, 2015. During cross examination, Appellant's counsel asked Ms. King whether she began talking to Appellant more after her conversation with Detective Yingling so that she could ask Appellant to sell her cocaine without arousing suspicion. Ms. King responded that it was not unusual for her to ask Appellant to sell her drugs because she had purchased drugs from Appellant on many occasions in the past. She further denied that she had ever sold cocaine to Appellant.

Ms. King testified that after Appellant showed her the bigger bags of cocaine on March 25, 2015, she told Appellant that she was interested in purchasing the larger amount of cocaine for a friend. The Commonwealth

presented text message exchanges between Ms. King and Appellant. On March 29, 2015, Appellant texted Ms. King "got any them?", which Ms. King understood to mean that Appellant was inquiring whether he could purchase pills from someone she knew. (*See* N.T. Trial, 7/7/16, at 29-33). Ms. King replied "he said no" to which Appellant responded, "Fucking tough ticket. I got that for him, though. Let me know." (*Id.*) Ms. King understood this to mean that Appellant was still willing to sell the larger amount of cocaine to Ms. King for her friend. The Commonwealth also presented a log of phone calls between Ms. King and Appellant. During cross examination, Ms. King acknowledged that there were many outgoing calls from her phone to Appellant's number on the days leading to and on the days of the controlled buys. Ms. King further testified that, between the phone calls and the text messages, this was a typical level of back-and-forth communication between her and Appellant.

After Ms. King's testimony, the Commonwealth recalled Detective Yingling and introduced Commonwealth Exhibit 22, which was a document setting forth that Appellant pled guilty to selling controlled substances in 1979. Appellant's counsel objected on the ground that Appellant's prior conviction had no relevance to the case. The court overruled the objection, stating "The relevance is, of course, because you are using the entrapment [defense]. And, again, it shows that he has a predisposition to do this." (*Id.* at 159). Exhibit 22 was admitted into evidence and Detective Yingling testified to its contents. On cross-examination, Detective Yingling acknowledged that the conviction

was from 37 years ago and there were no other dockets of conviction involving Appellant selling drugs in the 37 years that followed.

Amelia Fowler, Appellant's daughter, testified that Appellant and Ms. King had a close personal relationship, resulting in Ms. King staying overnight at Appellant's residence on a regular basis during 2013 and 2014. She further stated that Ms. King had a key to Appellant's house and had unrestricted access to the house. Additionally, Ms. Fowler confirmed that none of the drugs that were seized from Appellant's house belonged to her.

Appellant testified that he began spending a lot of time with Ms. King in 2012 and he began purchasing cocaine from her. Appellant acknowledged that he was an addict and regularly partied and did large amounts of cocaine with Ms. King. During that time, Appellant and Ms. King became close friends and Ms. King often stayed overnight at his house. He gave her a key to the house, and she was permitted at the house even when he was not home. In approximately July of 2014, Ms. King moved in with her boyfriend, Trevor. Thereafter, Appellant did not see Ms. King as frequently but they maintained a friendship. Appellant also began buying cocaine from Trevor. In March of 2015, Ms. King called Appellant repeatedly and asked if she could purchase a gram of cocaine from him. Appellant thought it was a strange request since she could get cocaine from Trevor but just assumed that Ms. King and Trevor were fighting. Due to their close relationship and Ms. King's persistent requests, Appellant agreed to sell her the cocaine. Appellant acknowledged that he sold cocaine to Ms. King during the two controlled buys but stated that

he had not otherwise sold cocaine to Ms. King or anyone else, other than the conviction from 37 years ago.

Appellant additionally testified that on the weekend before March 25, 2015, he purchased an ounce of cocaine from Trevor for personal use. Trevor gave Appellant the cocaine in a plastic baggie which was inside a white plastic shopping bag. Appellant admitted that there was a large amount of cocaine found in his house but stated that he purchased large amounts of cocaine for personal use so that he did not have to repeatedly place himself at risk of arrest. On cross examination, Appellant denied that the white plastic bag filled with 82.27 grams of cocaine that was found in his house belonged to him. He stated that he had never seen that bag before and did not know how it got into his house.

Following Appellant's testimony, the Commonwealth called Natasha Skaggs as a rebuttal witness. Ms. Skaggs identified Appellant and testified that she had purchased cocaine from him on numerous occasions from 2009 onwards.

The court instructed the jury on the entrapment defense. In relevant part, the court stated:

> The defense of entrapment is available to any defendant, regardless of his or her character. If you are satisfied that the defendant was entrapped, you should find him not guilty, regardless of any evidence that he was predisposed to commit that kind of crime, and had committed similar crimes.
>
> And as to the testimony of similar crimes committed by the

defendant, I just want to say that you can consider those when you consider whether or not he was entrapped, and that goes back to that element of a defendant is not entrapped merely because the police gave him an opportunity.

If the police go too far—that is, use tactics that might lead a law-abiding person to commit a crime—the police have perpetrated an entrapment. And because of that defense, that's why you heard evidence of some past crimes on the part of the defendant, and past sales.

But you can't consider the fact that he sold and whether–if you find that he has—if you find that he has sold drugs in the past, you can't consider that in determining whether he is guilty of committing these crimes on March 25th and April 1st, but you can consider whether or not he is a law-abiding citizen who wouldn't have committed the crime if he hadn't been induced.

(N.T. Trial, 6/7/16, at 298-99). At the conclusion of trial, the jury convicted Appellant of four counts of delivery or possession of a controlled substance with intent to distribute ("PWID"), five counts of possession of a controlled substance, two counts each of criminal use of a communication facility and criminal conspiracy, and one count of possession of drug paraphernalia. On July 22, 2016, the court sentenced Appellant to an aggregate term of 9½ to 19 years' incarceration. On June 15, 2017, this Court affirmed Appellant's judgments of sentence. *See Commonwealth v. Fowler*, 174 A.3d 77 (Pa.Super. 2017). Appellant did not seek further review with our Supreme Court.

On January 26, 2018, Appellant filed a timely *pro se* PCRA petition at both dockets claiming that his trial and appellate counsel had provided

ineffective assistance. The PCRA court appointed Erika Mills, Esquire ("Attorney Mills") to represent Appellant and scheduled an evidentiary hearing for July 24, 2018. Attorney Mills did not file an amended PCRA petition and proceeded on claims asserted in the *pro se* petition filed by Appellant. At the beginning of the evidentiary hearing, Attorney Mills requested a continuance, representing to the court that she only had 20 minutes to confer with Appellant prior to the hearing and felt that she was unprepared to proceed. The court denied Attorney Mills' request for a continuance and the hearing proceeded.

Attorney Mills called Robert Kinnear, Esquire ("Appellate Counsel") and Gary Gerson, Esquire ("Trial Counsel") to testify. Appellate Counsel testified that the only reason he did not raise the issue of whether the court erred in admitting Appellant's prior conviction on direct appeal was because he failed to flag the issue during his review. Trial Counsel prefaced his testimony by stating that he was only notified of the PCRA hearing a few days prior and had not had the opportunity to review the transcripts of trial. During several points in his testimony, Trial Counsel stated that he could not recall the specifics and could only speculate. Trial Counsel testified that he could not recall whether he objected to the admission of Appellant's prior conviction but stated that he was unsure if he had a basis to object at the time because Appellant may have opened the door to the evidence during his testimony. Regarding the question he asked Detective Yingling about whether the detective had knowledge of Appellant's prior drug involvement, Trial Counsel testified as follows:

> At that point and time our defense—we were on the ropes at that point and … there had been an extraordinary amount of evidence of drug trafficking that had come in and desperate measures were required and I took a calculated risk in asking that question to try to support the entrapment theory.

(N.T. PCRA Hearing, 7/24/18, at 53).

On August 17, 2018, the court denied Appellant's PCRA petition. Appellant appealed to this Court, asserting that Attorney Mills provided ineffective assistance of counsel. Following a series of procedural delays, on July 8, 2022, this Court vacated the order denying PCRA relief and remanded the matter to the PCRA court to determine whether Attorney Mills provided ineffective assistance. *See Commonwealth v. Fowler*, 283 A.3d 351 (Pa.Super. 2022). The PCRA court appointed new counsel to represent Appellant. On January 18, 2023, the court ordered Appellant to file a brief setting forth his argument that Attorney Mills provided ineffective assistance of counsel, and Appellant complied on February 17, 2023. On March 10, 2023, the court found that Attorney Mills provided ineffective assistance of counsel and ordered Appellant to file an amended PCRA petition.

On April 10, 2023, Appellant filed an amended PCRA petition, raising various claims that Trial Counsel and Appellate Counsel provided ineffective assistance. The court conducted an evidentiary hearing on October 3, 2023. At the hearing, Appellant's counsel informed the court Appellant was not calling any witnesses and would rely on the testimony from past hearings and the paper record. On January 4, 2024, the court denied Appellant's amended

PCRA petition. Appellant filed timely notices of appeal at each underlying docket on January 26, 2024. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on February 15, 2024. This Court consolidated the appeals *sua sponte* on June 21, 2024.

Appellant raises the following issues for our review:

Was Appellant's 37-year-old drug sales conviction improperly admitted into evidence?

Did the [PCRA] Court err in concluding that there was insufficient evidence to present the issue of entrapment to the jury?

Did the [PCRA] Court fail to address nearly a dozen, diverse PCRA issues that had been raised, briefed, categorized, and summarized?

(Appellant's Brief, at 4) (reordered for purpose of disposition).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

In his first two issues combined, Appellant asserts that the court erroneously overruled Trial Counsel's objection and admitted evidence of Appellant's prior conviction to show that Appellant had a predisposition to commit drug offenses. Appellant asserts that there was no legitimate purpose for introducing evidence of Appellant's prior conviction because the entrapment defense should be based on the conduct of the police and not on Appellant's criminal history or propensity to commit crimes. Appellant asserts that Appellate Counsel provided ineffective assistance of counsel by failing, without justifiable reason, to raise this properly preserved, meritorious issue of trial court error on direct appeal.

Appellant further contends that the trial court compounded this error by erroneously instructing the jury that they could consider evidence of Appellant's prior offense in evaluating whether Appellant was entrapped. Appellant asserts that Trial Counsel provided ineffective assistance by failing to object to the court's erroneous instruction. Appellant argues that he presented sufficient evidence at trial of entrapment to submit the issue to the jury and the court's erroneous instruction to the jury resulted in his conviction. Appellant concludes that the court erred in concluding that Appellate Counsel and Trial Counsel provided effective assistance, and this Court should vacate the order denying PCRA relief and grant appropriate relief. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal*

*denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. Spotz*, 624 Pa. 4, 33, 84 A.3d 294, 312 (2014) (citation and quotation marks omitted). Where an appellant claims that his trial counsel was ineffective for failing to object to an erroneous jury instruction, the appellant must demonstrate "a reasonable probability that the outcome of [the appellant's] trial would have been more favorable to [the appellant] had trial counsel objected to the trial court's instruction." *Id.* at 48, 84 A.3d at 321. "A reasonable probability is a probability that is sufficient to undermine

confidence in the outcome of the proceeding." *Id.* at 34, 84 A.3d at 312 (citation omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Additionally:

> [T]he test for prejudice in the ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth. As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error.

*Spotz, supra* at 38-39 (citation omitted). "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Commonwealth v. Stefanowicz*, 315 A.3d 162, 173 (Pa.Super. 2024).

Additionally, the Crimes Code defines entrapment, in relevant part, as follows:

> **§ 313. Entrapment**
>
> **(a) General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of proof.**—[A] person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

\* \* \*

18 Pa.C.S.A. § 313. "The burden is on the defendant to establish entrapment and the inquiry focuses on the conduct of police, not the predisposition of the defendant." *Commonwealth v. Joseph*, 848 A.2d 934, 939 (Pa.Super. 2004).

[T]he test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other *indicia* of a predisposition to commit crime.

As this Court explained[, t]he objective approach conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

- 16 -

In their zeal to enforce the law, government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce commission of the crime so that the government may prosecute. ***See, e.g.,*** [***Commonwealth v. Borgella****, 531 Pa. 139, 143-44, 611 A.2d 699 (1992)*] (holding evidence supported entrapment instruction where paid police informant used false pretenses to secure defendant's confidence, encouraged defendant to buy drugs, and offered defendant lucrative job on condition that defendant provide drugs); ***Commonwealth v. Wright****, [578 A.2d 513 (Pa.Super. 1990)] (en banc)*, *appeal denied*, 526 Pa. 648, 585 A.2d 468 (1991) (holding entrapment established as matter of law where police helped informant cultivate false friendship with defendant in order for informant to persuade defendant to purchase and supply drugs); [***Commonwealth v. Lucci****, 662 A.2d 1, 7-8 (Pa.Super. 1995)*, *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1995)] (holding outrageous and egregious police conduct constituted entrapment as matter of law where confidential informant was defendant's very close friend, confidential informant knew defendant had just returned from drug rehabilitation, confidential informant appealed to bonds of friendship and sympathy engendered by his mother's alleged impending death, and repeatedly approached defendant about selling drugs in exchange for "free high").

Where police "do no more than afford appellant an opportunity" to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense. ***Commonwealth v. Morrow****, [650 A.2d 907, 913 (Pa.Super. 1994)]*, *appeal denied*, 540 Pa. 648, 659 A.2d 986 (1995). ***See also Commonwealth v. Zingarelli****, 839 A.2d 1064 (Pa.Super. 2003)*, *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004) (providing opportunity without attempting to overcome appellant's reason and good sense does not rise to level of outrageousness necessary to find entrapment as matter of law); ***Commonwealth v. Ritter****, [615 A.2d 442 (Pa.Super. 1992)]*, *appeal denied,* 535 Pa. 656, 634 A.2d 220 (1993) (offering opportunity to sell drugs alone does not constitute sufficiently outrageous police conduct for purposes of entrapment defense). Thus, the availability of the entrapment defense under the statute does not preclude the

police from acting so as to detect those engaging in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation.

*Commonwealth v. Marion*, 981 A.2d 230, 238–39 (Pa.Super. 2009), *appeal denied*, 605 Pa. 697, 990 A.2d 729 (2010) (some citations and quotation marks omitted).

Instantly, Appellant failed to establish that he was prejudiced by Trial Counsel and Appellate Counsel's alleged failures. Appellant argues in his brief that he was prejudiced because he presented **some** evidence at trial that arguably supported an entrapment defense such that the issue was properly submitted to the jury. Nevertheless, this falls short of the burden that Appellant must meet to establish prejudice for an ineffective assistance of counsel claim. *See Spotz, supra*. Appellant must establish that but for counsel's failures, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* In other words, Appellant must establish that but for Trial Counsel and Appellate Counsel's alleged failures, there is a reasonable probability that he would have succeeded on his entrapment defense. Appellant has not met this burden.

Initially, we note that it was Appellant's burden of proof at trial to establish that the police conduct in his case amounted to entrapment. To meet that burden, the only evidence that Appellant put forth which arguably supported an entrapment defense was evidence of his close relationship with Ms. King and his own testimony about Ms. King's conduct that led to the

controlled buys. The mere fact that Appellant and Ms. King had a close relationship, without more, is insufficient to establish entrapment. **See Marion, supra** (holding that evidence that confidential informant used friendship with appellant to set up sale, without additional evidence of egregious conduct, was insufficient to support entrapment defense as matter of law).

Additionally, the Commonwealth presented overwhelming evidence to discredit Appellant's testimony that he only sold cocaine to Ms. King due to their close personal relationship and her persistent pleading. Appellant did not just engage in one isolated instance of selling cocaine to Ms. King but agreed to and participated in a second sale for a much larger amount. Ms. King testified that their communication leading up to the controlled buys was not unusual for their relationship and denied that she persistently and aggressively asked Appellant for drugs in the days leading up to the controlled buys.

The Commonwealth supported Ms. King's testimony by presenting text message exchanges and a log of phone calls between Appellant and Ms. King. While the call log shows that there are more outgoing calls from Ms. King to Appellant than vice versa, the documents show that the overall communication between them is mutual and not one-sided. Additionally, the text message exchanges do not show any support for Appellant's claim that Ms. King repeatedly hounded him to sell her drugs. Rather, Ms. King identified

a text message where Appellant confirmed that he was wiling to sell her cocaine without her prompting. The Commonwealth also presented the video recorded by Ms. King during the second controlled buy. In the video, there is no indication that Appellant felt pressured or was reluctant to sell Ms. King the cocaine. On the contrary, Appellant actively engages in conversation about the amount and price for the sale and even inquires whether Ms. King would like to also purchase acid.

Further, the Commonwealth presented significant evidence that challenged the overall credibility of Appellant's testimony. Appellant denied that the 82.27 grams of cocaine found in his house belonged to him. Nevertheless, the Commonwealth presented evidence that the 82.27 grams of cocaine was recovered from Appellant's laundry room, sitting in the open, immediately after Appellant vacated the residence. The Commonwealth further presented evidence that Ms. King and her car were searched immediately prior to interacting with Appellant to ensure that she did not have any drugs with her and was watched until she entered Appellant's house. Appellant also testified that he only possessed cocaine for personal use and did not sell drugs to anyone other than Ms. King during the two controlled buys. However, the Commonwealth presented evidence that the amount of cocaine that was found in Appellant's residence was not consistent with personal use. The Commonwealth also presented evidence that a scale, ledger, and packaging materials were recovered from Appellant's house.

Additionally, on rebuttal, Ms. Skaggs testified that she had purchased drugs from Appellant on many occasions.[2]

We further note that the prejudicial effect of the prior conviction on Appellant's entrapment defense was greatly minimized by the fact that the conviction was from 37 years ago. Appellant's trial counsel further highlighted this fact and used it to support Appellant's defense by eliciting testimony from Detective Yingling that there were no other dockets of drug convictions for Appellant in the 37 years that followed.

As such, regardless of whether Trial Counsel and Appellate Counsel unreasonably failed to challenge the admission of Appellant's prior conviction and/or object to the court's instruction that the jury could consider Appellant's past offense when deciding whether he was entrapped, Appellant cannot establish that he was prejudiced as a result. In other words, in light of the

_____

[2] The Commonwealth charged Appellant with PWID and possession of drug paraphernalia in connection with the drugs recovered from Appellant's residence. As such, the items recovered from Appellant's residence were properly admitted into evidence. Additionally, after Appellant testified that he did not sell drugs to anyone other than Ms. King, Ms. Skaggs' testimony was properly admitted on rebuttal. We acknowledge that the jury was not permitted to consider this evidence to judge Appellant's predisposition to commit crime as it relates to the defense of entrapment. Nevertheless, the jury was permitted to consider the properly admitted evidence to judge the overall credibility of Appellant's testimony, including Appellant's testimony regarding Ms. King's conduct. **See Commonwealth v. Conte**, 198 A.3d 1169, 1180 (Pa.Super. 2018), *appeal denied*, 651 Pa. 601, 206 A.3d 1029 (2019) (reiterating that rebuttal evidence of prior bad acts may be admissible to impeach credibility of testifying defendant). As such, this evidence is relevant to our prejudice analysis.

overwhelming evidence the Commonwealth presented to refute Appellant's evidence of entrapment, we cannot say that but for counsels' alleged errors, there is a reasonable probability that Appellant's entrapment defense would have been successful at trial. *See Spotz, supra*; *Marion, supra*. Accordingly, we discern no error with the PCRA court's determination that Appellant is not entitled to relief on either of these ineffective assistance of counsel claims. *See Ford, supra*.

In his third issue, Appellant contends that the PCRA court failed to address the remaining claims raised in Appellant's amended PCRA petition without justification. Appellant claims that in the amended petition, Appellant stated that he adopted all the claims raised in Appellant's initial *pro se* PCRA petition and further raised 14 additional issues, numbered 2.a to 2.n. Appellant asserts that he argued the merits of these 13 new issues in the brief he previously filed to argue that Attorney Mills provided ineffective assistance of counsel. Appellant claims that at the evidentiary hearing, he only withdrew two claims preserved from Appellant's original PCRA petition and one of the additional claims asserted in the amended PCRA petition. Appellant concludes that he did not waive or withdraw any of his other claims, and the PCRA court erred by failing to address them. We disagree.

When counsel is appointed after a petitioner files a *pro se* PCRA petition, "[i]t is incumbent upon counsel to examine the merits of the *pro se* claims and determine whether those issues are worth pursuing in an amended petition."

*Commonwealth v. Johnson*, 179 A.3d 1153, 1157 (Pa.Super. 2018). When counsel files an amended petition, any "attempt to incorporate by reference [claims asserted in the *pro se* PCRA petition], without any further explanation or elaboration upon the legal validity of such claims, amounts to hybrid representation, which is not permitted." *Id.* As such, where counsel files an amended PCRA petition, "the *pro se* claims [can]not be merely incorporated, and, in turn, are waived on appeal." *Id.*

Instantly, the court determined that Appellant either waived or failed to provide an evidentiary basis for all the claims asserted in his amended PCRA petition other than the two already discussed herein. The record supports the court's conclusion. In the first numbered paragraph of the counseled amended PCRA petition, counsel asserts that he expressly adopts and reiterates all of the claims raised in Appellant's initial *pro se* PCRA petition. Counsel attached a copy of the *pro se* PCRA petition but did not otherwise include argument for these claims in the amended PCRA petition. Because the issues from Appellant's *pro se* PCRA petition cannot merely be incorporated by reference, Appellant has waived these claims. *See Johnson, supra*.

In the second numbered paragraph of the amended PCRA petition, Appellant asserts 14 additional claims, numbered from 2.a to 2.n. At the evidentiary hearing, Appellant's counsel expressly withdrew claim 2.m but asserted that he was proceeding on the remaining claims. There is no indication in the record that Appellant intended to withdraw any additional

- 23 -

claims. As such, Appellant preserved claims 2.a to 2.l for the PCRA court's consideration.[3] However, we agree with the PCRA court that Appellant failed to provide evidentiary support for these claims.

Other than the claims already discussed, claims 2.a to 2.l assert that Trial Counsel provided ineffective assistance by either failing to object to the Commonwealth's questioning or asking questions during cross examination without a strategic basis. Appellant argues that Trial Counsel lacked a reasonable strategy for his actions, but Appellant failed to provide any evidentiary support for his claims and merely speculates as to Trial Counsel's alleged deficient rationale for his decisions. At the evidentiary hearing on October 3, 2023, the PCRA court permitted Appellant to present evidence to support his claims, but Appellant elected not to present any evidence and did not call Trial Counsel to testify. Rather, Appellant stated that he was relying on the paper record and the testimony provided by Trial Counsel at the previous PCRA hearing, where he was questioned by Attorney Mills. Out of the alleged failures Appellant raised in 2.a to 2.l that have not already been

_____

[3] 2.n merely states that Appellant raises "all other contentions of ineffective assistance of counsel … which are set forth in the attached brief, filed pursuant to order entered on January 18, 2023 [arguing that Attorney Mills provided ineffective assistance]—but which have been inadvertently omitted from the foregoing paragraphs of amendment." (Amended PCRA Petition, filed 4/10/23, at 3). As Appellant failed to identify and assert any specific claims, any claims purported to be preserved by 2.n are waived. *See* Pa.R.Crim.P. 902(B) (providing that failure to state ground for relief in PCRA petition shall preclude defendant from raising that ground in any proceeding for post-conviction collateral relief).

discussed, the only issue Attorney Mills questioned Trial Counsel about was his basis for asking Detective Yingling whether he knew of prior drug involvement by Appellant. This issue was identified as 2.d in Appellant's amended PCRA petition. As such, other than issue 2.d, Appellant has failed to meet his burden of proof to establish the reasonable basis prong of the ineffective assistance of counsel test and these claims must fail.[4] **See Commonwealth v. Koehler**, 614 Pa. 159, 202-03, 36 A.3d 121, 147 (2012) (holding that where petitioner was given evidentiary hearing and failed to question counsel regarding his reasons for alleged failures, petitioner fails to

_____

[4] At 2.i and 2.j in the amended PCRA petition, Appellant asserts:

> i) [Trial Counsel] failed to object to questions put to [Appellant] about alleged prior drug sales to [Ms.] King and to others;
>
> j) [Trial Counsel]'s failure at i) above permitted the Commonwealth to call Natasha Skaggs in rebuttal;

(Amended PCRA Petition, filed 4/10/23, at 2). Attorney Mills did question Trial Counsel as to why he did not object to Ms. Skaggs' testimony. Counsel responded that he did not believe he had a basis to object because her testimony was offered in rebuttal to Appellant's testimony. Attorney Mills did not, however, question Trial Counsel about his failure to object to questions posed to Appellant regarding prior drug sales to Ms. King and others, other than the 1979 conviction, which was already in evidence at that point in trial. Appellant's ineffectiveness claim regarding Ms. Skaggs' testimony, as presented in 2.j, is rooted in Trial Counsel's failure to object to the Commonwealth's questioning of Appellant regarding drug sales to others. As such, although Trial Counsel was questioned about Ms. Skaggs' testimony, Appellant failed to establish the reasonable basis prong for both claims 2.i and 2.j by failing to ask Trial Counsel about his failure to object to the Commonwealth's questioning of Appellant.

sustain burden of proof to establish that counsel lacked reasonable basis for his decisions).

Regarding issue 2.d, the record demonstrates that Appellant cannot establish that he was prejudiced by Trial Counsel's alleged failure. Appellant largely argues that he was prejudiced because Trial Counsel's question elicited a response from Detective Yingling that alluded to prior drug activity by Appellant and arguably opened the door to additional evidence of Appellant's prior drug activity. Nevertheless, as previously discussed, regardless of any improperly admitted evidence of Appellant's prior drug transactions, Appellant cannot demonstrate prejudice because the evidence supporting an entrapment defense was extremely limited and overwhelmingly refuted by the Commonwealth. **See Spotz, supra**; **Marion, supra**. As such, Appellant cannot establish his ineffective assistance of counsel claim at 2.d. On this record, we cannot say the PCRA court erred in concluding that Appellant waived or failed to substantiate the remaining claims asserted in his amended PCRA petition. **See Ford, supra**. Accordingly, Appellant is not entitled to relief on any of his claims of error and we affirm the PCRA court's denial of Appellant's amended PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/09/2025